The Louisville, Evansville and St. Louis Railway Co. *v.* Donnegan *et al.*

No. 12,827.

The Louisville, Evansville and St. Louis Railway Company *v.* Donnegan et al.

111  179
114  445
111  179
125  55
111  179
131  423
111  179
151  502
111  179
158  672
111  179
162  326
111  179
168  216

CONTRACT.—*Construction of Railroad.— Estimates of Engineer.— Stipulation that They Shall be Conclusive.—Recourse to Courts.*—A stipulation in a contract between a railroad company and a contractor, that the estimates made by the former's engineers as to the quality, character and value of the work performed by the contractor shall be final and conclusive against the latter, "without further recourse or appeal," can not deprive him of the right to resort to the courts for the recovery of what may be due him, notwithstanding the estimates.

SAME.—*Taking Control of Work from Contractor.*—A provision in the agreement, that, if the contractor fails to employ such a force of workmen as the company's engineer may deem adequate to a completion of the work within the time fixed, the latter may do so and charge the contractor with the amount paid in wages, must be given a reasonable construction, and control of the work can not be taken from the contractor without sufficient cause.

SAME.—*Competency of Engineers.—Implied Undertaking as to.*—In such case there is an implied undertaking on the part of the railroad company that the engineer to be put in charge shall be competent, honest and reasonably careful, and that he will not make delays, caused by his wrongs, a pretext for taking the work out of the control of the contractor.

SAME.—*Material Furnished at Direction of Engineer.—Compensation Notwithstanding Contract.*—Where the work which the contractor undertakes to do is to be performed under the direction of the railroad company's engineer, who is clothed with almost absolute authority as to the manner in which it shall be done, the contractor is entitled to pay for piling of the original length ordered by the engineer and subsequently shortened at his direction, notwithstanding a provision in the contract that the contractor is to be paid for the lineal feet of piling actually used.

EVIDENCE.—*Experts.—Railroad Builders.—Time of Performing Work.—Opinion.*—Persons experienced, as contractors, in railroad building are experts, and may testify that, but for delays caused by the railroad company and its engineers, the work contracted for could have been completed within the time fixed in the contract.

SAME.—*Action by Railroad Contractor.—Cost of Work.*—In an action by a contractor against a railroad company, wherein it is alleged that the defendant had hindered and delayed the plaintiff in the prosecution of the work, and had wrongfully taken it out of the latter's control, and completed it at a reckless and extravagant cost and charged the plain-

The Louisville, Evansville and St. Louis Railway Co. v. Donnegan *et al.*

tiff therewith, evidence *as to the reasonable cost of the work is com-*
petent.

SUPREME COURT. — *Brief.* — *Mere Restating of Causes for New Trial.* — The
mere restating in a brief of the causes assigned for a new trial does not
meet the requirements of the rule of the Supreme Court relating to
briefs.

SAME:— *References to Record.* — Parties asking for a reversal of a judgment
must furnish references to such portions of the record as will show that
error intervened in the proceedings below.

From the Vanderburgh Circuit Court.

*A. Iglehart, J. E. Iglehart* and *E. Taylor,* for appellant.

*J. S. Buchanan, H. C. Gooding* and *C. Buchanan,* for
appellees.

ZOLLARS, C. J.—In April, 1881, appellees, as partners,
entered into a written contract with the railway company for
the construction of a certain section of its road in the State
of Illinois. It was therein agreed that the work should be
completed on or before the 1st day of August, 1881.

It was expressly stipulated that time should be of the es-
sence of the contract.

Appellees undertook to do all the grading, masonry, and
all such other work as might be necessary to construct the
stipulated section of the road in accordance with the specifi-
cations, made a part of the contract, as they might be appli-
cable, and agreeably to the directions of the engineer in charge
of the work, given from time to time during the progress of
the work.

The work was to be paid for by the company upon
monthly and final estimates made by its engineers, and it
was expressly stipulated that the estimates thus made by the
engineer in charge of the work should be conclusive as against
appellees, " without further recourse or appeal." The chief
engineer might review these estimates, and if he did so, his
estimates were to be substituted for the estimates reviewed.
For extra work the company was to pay the cost and ten per
cent. additional. The extra work was to be estimated by

the company's engineer, and these estimates were also to be final and conclusive as against appellees.

Appellees were to employ such a force of workmen as the engineer might deem adequate to the completion of the work within the time fixed. If they did not employ such a force as the engineer might thus deem adequate, he might employ such number of workmen as in his judgment would be necessary, and at such wages as he might find necessary and expedient; pay all such persons, and charge appellees with the amount as so much money paid to them upon the contract. Power was also given to the company's chief engineer to annul the contract, upon a written notice to appellees, if, in his judgment, the work was not prosecuted by them in a proper manner and with sufficient speed. It was also stipulated that, upon thirty days' notice to appellees, the company might, at any time, without cause, annul the contract, in which event they should be entitled to pay for work done up to that time. The right was reserved to the company's chief engineer to order, in writing, any modification or alteration to be made in the specifications, profiles and plans, and in like manner to direct and order the omission of any portion of the work mentioned in the specifications, or to substitute any other work for such portions. If he should determine upon earthworks, bridges, culverts, walls, or other work in addition to that embraced in the contract, appellees were bound to do such work for the prices agreed upon for like work, and upon the same terms and conditions, except with regard to the time of completing the work, which might be reasonably extended at the discretion of the chief engineer.

The first paragraph of appellees' complaint was based upon that contract, and its violation by appellant.

It is alleged therein that appellees began the work at once, furnished material, and continued to construct the road under the contract until in August, 1881, when the railway company, without right, and against their will, took charge of the work and prosecuted the same to completion; that they,

without fault on their part, were prevented from completing the section of road specified in the contract within the prescribed time, because of the company failing to procure the right of way, because of extra work ordered by the engineer, because of the engineer failing to furnish the height, centers and specifications of bridges and culverts, because of changes in the work ordered by the engineer, and because of the incompetency of the engineers; that, after the work was taken out of their hands, the company prosecuted the same at a reckless and exorbitant cost, far in excess of what was required or necessary; that, subsequent to the written agreement, the amount to be paid by the company per cubic yard for earth was fixed by a parol agreement; that in the final estimate the amount returned by the engineer as due to appellees for earth work done by them was too small, giving the figures; that the engineer ordered and directed that the piling for bridges should be of a certain length; that, being ignorant as to the proper length required, they obeyed, and, under the contract, were compelled to obey the instructions of the engineer; that, after the piling were furnished, the engineer ordered them to be shortened, and in the final estimate allowed appellees only for the amount of lineal feet actually used, and neglected and refused to allow them for the amount so cut off; that an excessive, unwarranted and fraudulent amount was charged against appellees by the engineer for placing bridge and culvert timbers furnished by them before their discharge from the work, which amount the engineer, in his final estimate, deducted from the amount due to them; that, subsequent to the written agreement, it was orally agreed between the parties, that appellees should be allowed $2 per thousand feet extra on a large amount of bridge and culvert timbers, because the same was purchased by them at an extra cost, at the request of the company through its proper officers; that in the final estimate by the engineer said extra amount so agreed upon was not allowed to appellees; that the company ordered appellees to remove

their pile-driver some six miles beyond the section to do extra work, and agreed to pay for such removal and extra work, and that the amount agreed upon was not returned by the engineer in his final estimate; that by the failure of the company to procure right of way, and the failure of the engineer, upon request of appellees, to furnish heights and centers, and to lay out the work, their men were left idle, to their damage in a large sum, giving the amount; that in the final estimate the engineer did not return the full amount due to appellees for iron furnished by them.

It is averred that the engineers in charge of the work, whose orders appellees were bound to obey, and who made the monthly and final estimates, were incompetent and unfit for the duties assigned them; that appellees were not allowed to inspect either the monthly or final estimates, and that, acting in collusion with the company, the engineers, at the time knowing that their estimates were too low and false and fraudulent, made them as they did for the purpose of cheating and defrauding appellees.

Another written contract, similar in all essentials to the above mentioned, except as it had reference to other sections of the road, was entered into by the parties at about the same time, for the construction of another section of the railroad in the State of Illinois. That contract provided that the work should be completed on or before the 1st day of August, 1881.

The second paragraph of appellees' complaint was based upon that contract, and its violations by appellant. The wrongs charged upon appellant in that paragraph are of the same nature as those charged in the first paragraph, and were charged in substantially the same way.

In June, 1881, a third written contract was entered into between the parties, for the construction of certain sections of the road in the State of Indiana. That contract, also, was similar, in essentials, to the others, except as it had reference to other sections of the road.

The third paragraph of appellees' complaint was based upon that contract, and violations of it by appellant. And here again the wrongs charged upon appellant are of the same nature, with the exception of some additional charges as to stone, etc., as those charged in the first paragraph of the complaint, and were charged in substantially the same way.

The fourth paragraph of the complaint is based upon the three contracts above mentioned, and alleges that they all related to work upon the same road, and in fact constituted but one contract, and were so treated by the parties; that payments were made upon all three, indiscriminately; that the accounts were so kept by the railway company and the appellees that amounts due to them upon and under any one of the separate contracts could not be distinctly ascertained; that the work done and materials furnished by appellees up to the time when the work was wrongfully taken charge of by the railway company amounted to $80,000; that if they had been allowed to complete the work under the contract, as they would have done but for the wrongs of the railway company, which are stated as in the other paragraphs, there would have been due to them from the railway company $96,000; that the fair and reasonable cost of furnishing the materials and doing the work according to the contract would not have exceeded $65,000; that appellees were entitled to recover the difference between that amount and $80,000, for materials furnished and work done under the contract, and $5,000 profits, which would have been made by them on the work done and materials furnished by the railway company in the completion of the work, etc.

It is sufficient here to state that the answers by appellant generally and specially denied all indebtedness, and all charges of wrong against it and its engineers and agents, and all charges of mistake and incompetency on the part of its engineers, whether as connected with estimates or otherwise. They further charged that the failure on the part of appellees to complete the work within the time fixed was caused

by their own neglects and wrongs; that the company made liberal advances to them as the work progressed, and that they fraudulently failed to pay for materials and labor, and thus involved the company in expensive litigations.

It was further alleged, that the company did not take the work from appellees as charged; that, on the contrary, the work was done by their employees under foremen of their own choosing, subject only to the proper direction of the company's engineers and such supervision in the disbursement of moneys as was rendered necessary by the fraudulent conduct of appellees, etc.

The trial court made the following special findings of facts and conclusions of law:

"SPECIAL FINDINGS.

"1. That the plaintiffs and defendant entered into the contracts mentioned and described in the plaintiffs' complaint, as therein stated.

"2. That in due time, and with a reasonable force, the plaintiffs entered upon the work of performing and completing the several contracts.

"3. That on account of an insufficient number, and the incompetency or negligence, or both, of the local or resident engineers upon all the sections embraced in the two contracts in Illinois and the contract in Indiana, the prosecution of the work by the plaintiffs was greatly interfered with and delayed.

"4. That when the contractors were ready to do the work, the necessary staking and alignment of the road had not been made or done, and the engineers' work in this respect, and also in furnishing the necessary data for bills of lumber for bridges, and proper designations as to where bridges, culverts, and piles were needed and expected to be placed, and the failure to procure the right of way in different places, each and all, substantially interfered with and delayed the prosecution of the work.

"5. That owing to the negligence, carelessness, incompe-

tency and mistakes of the company's engineers, the statements of the work were in many instances incorrect.

"6. That the plaintiffs could, and, so far as the evidence shows, would, have completed each of the several contracts mentioned in the complaint in the manner therein prescribed, and within the time limited by said contracts, if they had not been hindered and delayed by the fault, negligence, insufficiency and incompetency of the defendant's engineers.

"7. That the work was taken out of the control of the plaintiffs on the 20th day of October, 1881, and that the agents of said railway company incurred and permitted more expenses than even at that season of the year were necessary or proper for the completion of the work.

"8. That had the defendant's employees been without fault, negligence or incompetency, and had they not caused the delay of and interference with the work, the several contracts could and would have been completed at much less cost and expense, before the season had become unfit for that kind of work, and by the 1st of November, 1881.

"9. That the work was conducted by the employees of the defendant, after it was taken out of the hands of the plaintiffs, in a negligent, careless and reckless manner, both as to the manner of doing the same and making payments therefor, by reason of which that part of the work was made to cost at least twenty per cent. more than it ought to, or would have cost, if it had been done prudently and with proper regard to the rights of the plaintiffs.

"10. That a fair estimate of the work done upon the contracts at the prices agreed upon, and for extra work, and including reasonable estimates for losses on account of mistakes and delays, would have been $103,500.

"11. That a fair estimate of the money actually paid by said railway company to Donnegan & Co., and properly paid in the completion of the work under the contracts, would not exceed $90,368.

"12. As a conclusion of law upon these facts and the evi-

dence in the case, as taken by the stenographer, the court finds, that there is due to the plaintiffs from the defendant the sum of thirteen thousand and one hundred and thirty-two dollars ($13,132), with interest at six per cent., allowed as damages, from the respective times at which the same should have been paid, amounting to twenty-three hundred and fifty dollars ($2,350), making the sum of fifteen thousand four hundred and eighty-two dollars ($15,482).

" 13. Thereupon the court finds, that the plaintiffs are entitled to recover of and from the defendant, upon their complaint herein, the sum of fifteen thousand four hundred and eighty-two dollars ($15,482).

" WILLIAM F. PARRETT,
"Judge V. C. C."

The first proposition discussed by appellant's counsel is, that the court below erred in its conclusion of law upon the above facts.

One of their contentions is, that in order to avoid the conclusive effect of the estimates made by the engineers of the railway company, it was incumbent upon appellees to prove that those estimates were the result of fraud, accident or mistake ; that the trial court did not so find, and that, hence, appellees are bound by those estimates, and can not recover in this action.

As we have seen, one of the stipulations in the contract was that the engineers of the railway company should make final estimates of the quality, character and value of the work done by appellees, and that such final estimates should be final and conclusive as against appellees, " without further recourse or appeal." That stipulation in the contract did not, and could not, deprive appellees of the right to resort to the courts for a redress of wrongs, and for the recovery of whatever may have been due them.

The reason why such a stipulation is invalid has been so fully stated by this court that nothing more is required here than a citation of the cases. *Bauer* v. *Samson Lodge, Knights*

of Pythias, 102 Ind. 262, and cases there cited; Supreme Council of the Order of Chosen Friends v. Garrigus, 104 Ind. 133 (54 Am. R. 298).

But counsels' contention can not be maintained upon any theory. They seem to have overlooked some of the findings of the court. The fifth finding was, that, owing to the negligence, carelessness, incompetency and mistakes of the company's engineers, the statements of the work were in many instances incorrect. That finding is entirely sufficient to show that the estimates made by the company's engineers were incorrect, and to entitle appellees to recover what was due them, notwithstanding such estimates. The tenth and eleventh findings are in accord with, and lend support to, the fifth.

It is further insisted by appellant's counsel, that there is no finding that appellees were wrongfully excluded from the work, and that such a finding was necessary to support the conclusion of law. That the work was taken out of the control of appellees by the railway company, is definitely stated in the seventh finding. And, taking the findings as a whole, we think they sufficiently show that appellees were wrongfully excluded from the work.

The contract provided that if appellees did not employ such a force as the company's engineer might deem adequate to a completion of the work within the fixed time, he might employ such number of workmen as in his judgment would be necessary, pay them such wages as he might find necessary and expedient, and charge appellees with the amount, as so much paid to them under the contract, etc. Those provisions of the contract must be given a reasonable construction. It certainly was not intended by the parties that the engineer in charge should arbitrarily, at any time, and without any sort or shadow of reason, take the work out of the control of appellees and employ men at his pleasure. Nor could it have been intended that appellees should be subject to the whims of an incompetent, negligent, or dis-

honest engineer. And still less could it have been intended that the engineer might take the work out of the control of appellees, and employ men, etc., on account of delays caused by his own fault, negligence and incompetency.

There was, at least, an implied undertaking, on the part of the railway company, that the engineer to be put in charge, with such extended powers, should be competent, honest, and reasonably careful, and that he should not make delays caused by his wrongs a pretext for taking the work out of the control of appellees.

It was stated in the special findings, that on account of an insufficient number, and the incompetency and negligence of the local engineers, the prosecution of the work was greatly interfered with; that appellees were hindered and delayed in the prosecution and completion of the work by failure on the part of the company to procure right of way, and by failure on the part of its engineers to furnish proper stakes to locate bridges, culverts, etc., and that appellees could and would have completed the work within the time limited by the contract if they had not been hindered and delayed by the fault, negligence, insufficiency, and incompetency of appellant's engineers, etc. As before stated, the findings show that the work was taken out of the control of appellees, and, as we think, show that it was wrongfully taken out of their control.

It is further contended by appellant's counsel, that the several findings of facts by the court below are not sustained by sufficient evidence.

This court will not undertake to settle the conflicts that may be found in the sixteen hundred pages of evidence. That was for the learned judge who tried the case below, and had opportunities of judging of the credibility of witnesses which an appellate court can not have. We have ascertained that there is evidence tending to sustain all of the findings of the court. That fact having been ascertained,

the established rule applies which forbids a reversal of the judgment upon the weight of the evidence.

In appellant's motion for a new trial fifty-one causes were assigned, the most of which have reference to the admission and exclusion of evidence. These are all urged here, but as to the most of them appellant's counsel have done nothing more in their brief than to restate the causes. That does not meet the requirements of the rule in relation to briefs in this court. In some instances the pages of the record, where the rulings of the court may be found, are not given. In many others it is impossible for us to determine, from the limited amount of the evidence pointed out by references to the pages of the record, whether or not there was error in the rulings.

Parties asking for a reversal of a judgment must furnish references to such portions of the record as will show that errors intervened in the proceedings below.

One of appellees was allowed to testify that appellant's engineer in charge of the work, on one occasion, directed that piling of a certain length should be furnished, and that, after they were furnished upon the ground, of the length directed, the engineer ordered that portions should be cut off, which was done.

Appellant's counsel insist that there was error in the admission of that testimony, for the reason that, by the contract, appellees were to be paid only for the lineal feet of piling actually used in the work. We are not convinced that the admission of that testimony was erroneous. If it was competent for any purpose its admission was not available error. It was competent, we think, as tending to show, in some degree at least, that the engineer was incompetent and careless, and that appellees were hindered and delayed in the prosecution of the work, and, hence, were not in default. What weight should have been given to the testimony is another question; we have no means of knowing how much importance the court below may have attached to it, nor that

it was considered at all by the court in fixing the amount of recovery in favor of appellees; but, assuming that it was, and that the evidence was admitted for that purpose alone, we are yet not convinced that its admission was an error such as would justify this court in overthrowing the judgment. Appellant's engineer, under the terms of the contract, was put in charge of the work with almost absolute authority as to the manner in which the work should be done. Having and exercising such authority as the representative of appellant, it can not be said that appellees, and not appellant, should suffer the loss occasioned by his mistake or wrong in ordering the piling to be of a certain length.

One of appellees was also allowed to testify that, but for the delays, which he had mentioned as having been caused by appellant and its engineers, the work contracted for could have been completed within the time fixed in the contract.

Some of appellees' subcontractors were also allowed to testify that they could have completed the work embraced within their contracts on or before certain named dates, within the time for completion fixed by the contract between appellant and appellees. It is contended by appellant's counsel that the testimony was incompetent, because it consisted of inferences or opinions.

The witnesses were railway builders, who, by reason of their experience, may properly be termed experts. An expert has been described as nothing more than a man of experience in the particular business to which the inquiry relates; as one having peculiar knowledge or skill in reference to the subject-matter of inquiry; as a person instructed by experience. Lawson Exp. and Opin. Ev., pp. 195–6; Doster v. Brown, 25 Ga. 24; Mobile Life Ins. Co. v. Walker, 58 Ala. 290.

Non-expert witnesses may state their opinions as to matters with which they are especially acquainted, but which can not be specifically described. Carthage T. P. Co. v.

*Andrews,* 102 Ind. 138 (52 Am. R. 653); *Yost* v. *Conroy,* 92 Ind. 464 (47 Am. R. 156).

It has been said that a non-expert witness must, so far as possible, state the facts upon which he bases his opinions; that when the case is one in which all the facts can be presented to the jury, no opinion can be given; that there are cases where the witness can not put before the jury in an intelligible and comprehensible form the whole ground of his judgment or opinion, and that in such cases he may give his opinion, first stating the facts, so far as he can, upon which the opinion is based.

We agree with counsel as to the nature of the testimony to which they object, but considering the qualifications of the witnesses, the nature of the subject-matter of the inquiry, and the statements of facts by the witnesses, we think that the testimony was competent. A person of experience in building railways can, doubtless, form a more correct judgment as to the length of time required to construct and complete a section of the road than persons without such experience can, even though they may have knowledge of all the facts which can be stated by witnesses. *Louisville, etc., R. W. Co.* v. *Frawley,* 110 Ind. 18; *Jeffersonville, etc., R. R. Co.* v. *Lanham,* 27 Ind. 171; Lawson Exp. and Opin. Ev., pp. 79, 95, 460, and cases there cited; Rogers Exp. Test., section 116, and cases there cited.

We are not advised upon what ground appellant's question to appellee Conkey, as to the reliability and responsibility of appellees' subcontractors, was ruled out. It may have been upon the ground that the question was not within the scope of a proper cross-examination. In the absence of anything more than is shown in the briefs, we must presume that the court below ruled correctly.

Nor can we say that the court erred in admitting testimony as to the cost of delivering piling along the line of road.

Appellees contended that appellant had hindered and delayed them in the prosecution of the work, and had wrong-

:fully taken the work out of their control, and completed it at a reckless and extravagant cost, and charged them with it. As bearing upon that issue, it was competent for them to show the reasonable cost of the work.

We do not think that it would be profitable to extend this ·opinion further upon the several causes assigned for a new trial, all of which we have examined. In our examination ·of the record, assisted by the arguments of counsel, we have ·discovered no error which would justify a reversal of the _judgment.

Judgment affirmed, at appellant's costs.

Filed May 26, 1887.