## THE MISSOURI PACIFIC RAILWAY COMPANY v. MARTIN DULANEY.

ELEMENTS OF DAMAGE; *Overruling Motion to Strike out, Not Error.* On the trial of an appeal from the award of commissioners appointed to condemn a small triangular piece of ground for the use of a railway company, the jury made special findings as to elements of damage, estimating inconvenience, disfigurement and damage, and stating the amount of each. They were not required to make the special finding as to damage more definite, or to recite and estimate other elements than those two mentioned, but a motion was made to strike them all out. *Held,* That in this particular case there were other elements of damage than inconvenience and disfigurement, and that it was not error to overrule the motion.

### *Error from Atchison District Court.*

THE opinion states the nature of the action, and the facts. Judgment for plaintiff *Dulaney,* at the February Term, 1886. The defendant *Railway Company* brings the case here.

*Waggener, Martin & Orr,* for plaintiff in error.

*Hudson & Tufts,* for defendant in error.

Opinion by SIMPSON, C.: This was an appeal from the award of commissioners appointed to condemn a small piece of land in the city of Atchison, for the use of the railway company. There are but two assignments of error; and the first is as to the admissibility of certain parts of the testimony of one John Barry, a witness for the plaintiff below. He had stated that he knew the property in controversy; that he had lived in Atchison since 1872; that he knew the market value of the property before the railway company "took any off;" that the value of the strip taken was from $90 to $100; that the value of the property after the taking-off of the strip was so much; that the property was used as a hotel; and he was then asked, "What would be the principal damage to the property?" This question was objected to as "calling for the opinion of the witness;" "not a proper subject of expert testimony;" "incompetent, irrelevant, and immaterial." The objections were overruled, and exceptions noted. He answered, "The closer the road comes to the property, the worse and more damage it does." This is the particular question and answer complained of. The rule is for the witness to state the value just before and just after the appropriation, and the difference is the amount of damages that the witness fixes. Is it improper to ask him what is the principal damage, that is, what acts tend to form his estimate? What things does he take into consideration in fixing the difference in value just before and just after the taking? All such questions are proper on cross-examination; why not in chief? It may be a matter of opinion, (in the nature of things it probably is,) but so were the answers to preceding questions, and this necessarily grew out of them. We think the question was proper, even if the answer was not directly responsive. The answer was a statement within the common knowledge of any ordinary man. It cannot be, in view of all the other evidence in the case, if the question was improper, that it was such a material or prejudicial error that the case ought to be reversed for that reason.

The other assignment is, that the court erred in overruling the motion of the plaintiff in error to strike out of the general finding of the jury the following items, to wit: the item for disfigurement, $100; the item for inconvenience, $100; the items for damages, $150. The jury were requested to answer the following question:

"*No. 6:* What are the several elements or sources of damages which make up the aggregate of the answer to special question No. 5, and how much of said aggregate is made up by each of said elements or sources of damage? A. Disfigurement of property, and inconvenience and damage of sale." (Giving the figures for each as above stated.)

In answer to question No. 5, the jury fixed the amount of real and actual damage to the remainder of the property at $350. They fixed the value of the land taken at $75. The property was a lot on the corner of Main and Fourth streets, in the city of Atchison, fifty feet front by ninety feet. There is a hotel on the lot fifty by seventy feet, built of brick, two stories and a basement, containing about thirty rooms, constantly in use for all the purposes of a hotel. The strip of ground condemned lies in the rear of the hotel building, and had been used for a yard, and had a coal house and chicken coop thereon. The portion taken was a strip triangular in form, being four feet wide at one end, and twelve feet six inches at the other, containing about twenty-five square feet of ground. It is said that the two items of inconvenience and damage should be stricken out. Counsel for plaintiff in error contend that according to the decisions of this court, inconvenience as an element of damage is only allowed where the land is cut in two, so that the tract is divided, and one part rendered less easy of access, on account of the road-bed or the taking of the right-of-way. It may be that in the reported cases this is the only example of inconvenience that is cited and commented on, but it surely does not require much argument to show that the lessening of the area of the yard, the dangers and difficulties of approach from that direction, the loss of room for coal houses, chicken coops, and other

necessary and indispensable out-buildings, and many other things, are to be considered in determining inconvenience as an element of damage. Disfigurement is an element in this case, in its most simple form. The usual proportion of a town lot, in the form most universally used, and accepted as best by the experience of many years, is destroyed by taking a triangular portion of it and dedicating it to a use entirely different from that of the remainder of the lot; a use so inconsistent with that of the remaining portion of the lot that there can be no benefit derived from mutual effort or combined interest. The portion taken is to be used for the track of a railroad. It is as pure an example of disfigurement as can be imagined, as distinguished from inconvenience. As we regard it, inconvenience is experienced in the use and enjoyment of property, but disfigurement affects the property itself. Of course the value of the piece taken is adjudged and paid, but the irregular, ill-shaped remainder is a perpetual reminder that disfigurement is an element to be taken into consideration in estimating damage.

There are very many things which might have been considered by the jury as elements of damage, other than disfigurement and inconvenience, that are grouped together in the last item of "damage, $150." No objection was made by counsel to the form of the answer, and we do not now understand him as objecting on that account; his contention seems to be one of logical deduction, rather than of mere formality. In other words, the "marrow" of his proposition is, that when inconvenience is assessed at $100, and disfigurement at $100, the elements of damage in this particular are exhausted. We do not think so. Among the various, if not many, things that might operate to the prejudice of the owner of the irregularly-shaped lots, bounded on two sides by railroad tracks, are: The effect these things would have, not on his possession and enjoyment, but on the market value of the property; its undesirableness for all kinds of residence or business purposes; the annoyance of the trains; crossing the tracks to approach it from two sides; and the danger attending the operation of

the railroad: where a part of a brick-yard was taken, and the owners prevented from enlarging it, (11 Am. Rly. Rep. 364;) the increased hazard of fire, causing increased rates of insurance, (17 Minn. 215; 19 id. 283; 20 id. ·28;) also, injuries to the premises as a house of public entertainment, (5 Rich. 428; 6 id. 47; 12 id. 634.) However speculative or inappreciable some of these items may be, and more especially the latter, they are nevertheless held to be subjects of compensation in the courts. (1 Rorer on Railroads, 388, and authorities cited.)

The jury estimated inconvenience, disfigurement, and other damage. If the plaintiff in error was dissatisfied with this answer, he should have asked the court to send the jury back and require them to specify the other elements of damage besides the two mentioned. This was not done, but a motion was filed, after the jury were discharged, to strike them all out of the special verdict. If insisted on, the jury might have enumerated other elements.

We do not see that such material error is shown as compels us to reverse the case. While the record shows that a judgment was rendered, it nowhere recites it. A literal transcript of the precise judgment in all its terms ought to be contained in the case-made, and it may happen that if it is not, this court would not consider the error assigned. Here there is a specific averment that the court rendered a judgment on the general verdict, but the judgment itself ought to have been set out, word for word.

We recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.