## NEW JERSEY, INDIANA & ILLINOIS RAILROAD COMPANY v. TUTT ET AL.

[No. 20,857.   Filed February 26, 1907.]

1. DAMAGES.—*Date from which Estimated.—Subsequent Injuries. —Eminent Domain.—Railroads.*—Damages assessed for the condemnation of a railroad right of way are estimated as of the date of the filing of the complaint for condemnation, any subsequent damage, apart from the construction of the road according to the instrument of appropriation, being the subject of a separate action. p. 210.

2. WORDS AND PHRASES.—*"Stream of Water."—"Watercourse." —Railroads.—Statutes.*—The phrase "stream of water" and word "watercourse," as used in clause 5, §5153 Burns 1901, §3903 R. S. 1881, giving railroad companies the right to cross such streams, mean substantially the same thing, and include natural streams with defined banks and bottoms, through which water has immemorially flowed at least for substantial portions of the year. p. 210.

3. WATERS.—*Streams.—Watercourses.—Artificial Drains.—Railroads.—Statutes.*—An artificial ditch or drain used to carry off surface-water is not a "stream of water" nor a "watercourse" within the meaning of clause 5, §5153 Burns 1901, §3903 R. S. 1881, giving railroad companies the right to cross such streams upon condition that they be restored to their former state. p. 211.

New Jersey, etc., R. Co. *v* Tutt—168 Ind. 205.

4. WATERS.—*Surface.*—*Rights of Landowners.*—Surface owners may take any measures desirable to prevent surface-water from flowing across or upon their lands.    p. 212.

5. RAILROADS.—*Easements.*—*Rights of Way.*—*Surface-Waters.*—Railroad companies, owning only a right of way, may repel outside surface-water in any way they please.    p. 212.

6. DAMAGES.—*Obstruction of Drains.*—*Railroads.*—*Eminent Domain.*—In the condemnation of a railroad right of way, the probable damage to a landowner by reason of the company's obstruction of such owner's artificial drain crossing such way, should be included.    p. 212.

7. RAILROADS.—*Instruments of Appropriation.*—*Drains.*—An instrument of appropriation giving the company "the right to conduct water by drains, and the right to make proper drains," does not give the landowner any right to drain, or to continue an artificial drain, across the appropriated right of way. p. 213.

8. EVIDENCE. — *Obstruction of Drain.*—*Damages.*—*Railroads.*—*Eminent Domain.*—In a proceeding to condemn a railroad right of way, it is proper to show the damage to a landowner caused by the obstruction of his ditch and consequent backing of the waters upon his land by the company, such obstruction having been made prior to the trial.    p. 213.

9. SAME. — *Present and Prospective Damages.* — *How Shown.*—*Railroads.*—*Eminent Domain.*—The present and prospective damages to a landowner's farm, by the appropriation of a railroad right of way, may be shown by the results of the actual construction, if the road is built before the trial is held, the presumption being that the road was built as the company intended to build it when the complaint for condemnation was filed.    p. 213.

10. DAMAGES.—*Obstruction of Drains.*—*Negligence.*—*Railroads.*—Where a railroad condemns a right of way, including the right to drain same as it desires, the contemporaneous or subsequent obstruction or destruction of the landowner's artificial drain crossing such way, gives no new right of action for damages, apart from the damages consequent upon such appropriation.    p. 215.

11. EVIDENCE.—*Opinions.*—*Size of Tile needed for Drains.*—The size of a tile needed for the drainage of a large tract of land is a proper subject for expert testimony.    p. 215.

12. SAME.—*Opinions.*—*Question for Jury.*—Witnesses will not be permitted to give opinion evidence on questions which the jury is as well prepared to decide, or upon the exact questions the jury must decide.    p. 216.

13. EVIDENCE.—*Opinions.*—*When Details cannot be Placed before Jury.*—Where the details necessary for an intelligent opinion cannot be adequately laid before the jury, expert evidence of the conclusion to be drawn from such details is admissible. p. 216.

14. SAME.—*Value of Lands.*—*Elements of.*—A witness in giving his opinion of the value of land may be required to describe the character of the soil and to state the crops to which it is adapted. p. 217.

15. DAMAGES.—*Elements of.*—*Misshapen Fields.*—*Inconvenience to Stock.* — *Fencing.* — *Fires.*—*Railroads.*—*Eminent Domain.*— The cutting of a landowner's fields into inconvenient shapes, the obstruction of ways for stock, the need for additional fencing, and increased hazard from fire, are elements of damage in the appropriation of a railroad right of way. p. 218.

16. TRIAL.—*Refusing to Give Instruction on Point already Covered.*—It is not erroneous to refuse to give an instruction on a point already covered by another instruction. p. 218.

From St. Joseph Circuit Court; *Walter A. Funk,* Judge.

Condemnation proceeding by the New Jersey, Indiana & Illinois Railroad Company against Joseph D. Tutt and others. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*Meyer & Drummond,* for appellant.
*Anderson, DuShane & Crabill,* for appellees.

HADLEY, J.—This was a proceeding by appellant to condemn a right of way for a steam railroad over the lands of appellees. Appellant filed an instrument of appropriation in the office of the clerk of St. Joseph county, on June 18, 1904. On July 9, 1904, appraisers were duly appointed to assess the damages, who estimated the same at $491, and filed their award with the clerk, July 27, 1904. August 3, 1904, appellees filed their exceptions to the award. Upon these exceptions the proceedings were transferred to the St. Joseph Circuit Court. The question of damages raised by the exceptions was submitted to the jury October 17, 1904,

which body returned a verdict for $1,750. Over appellant's motion for a new trial the court rendered judgment upon the verdict, from which this appeal was taken.

The record shows that the appellees are the owners of four forty-acre tracts of land, three forties lying north and south, and the fourth lying immediately west of the north forty, thus giving the whole tract an "L" form. Appellant's railroad traverses the west and north forty near the center, in a somewhat northeasterly and southwesterly direction. The Kankakee river lies a short distance to the northwest, and most of the appellees' land and a large amount of other lands adjacent on the north, east and southeast form a part of the head-waters of said river. A short time before the commencement of these proceedings Mr. Studebaker, the owner of thé lands abutting on the Kankakee river, dredged a large ditch eastwardly through his land, to the lands of Mr. Kaufman. The latter in turn, beginning at the end of the Studebaker ditch, cut a drain, six feet at the top, five feet deep, and two and a half feet at the bottom, eastwardly through his land to the southwest corner of appellees' north and west forty; thence appellees continued it, at the same size and depth, eastwardly along the entire side line of the last-named forty acres, and thence southeasterly across their other lands to the lands of Mr. Burroughs on the east, at which latter place it received, for conveyance to the Kankakee river, a large body of water collected and brought down from the east and southeast through a swale. The waters that flowed through the ditch came wholly from heavy rains or melting snows in the spring and fall, and before the construction of the ditch there was no channel of any kind across appellees' land, and in times of heavy rains the waters would spread out over the marsh and the grounds of the plaintiff, and slowly make their way to the Kankakee river. At the point where the railroad embankment crossed the ditch described, appellant put in a twenty-four-inch tile, claimed by some of

the witnesses to have been set eighteen inches higher than the bottom of the ditch on the upper side. At the time of the trial the railroad was so far completed that the ties were being laid through appellees' land.

During the trial a witness was asked the following question: "Did you notice whether the tile was put in on a level with the bottom of the ditch? A. I should think it was about eighteen inches from the bottom of the ditch. The water is backed up from time to time. It was when I was there."

Appellant moved to strike out the following words of the answer: "The water is backed up from time to time. It was when I was there"—upon the ground that overflow caused by backing water was not a proper element of damage in a condemnation proceeding, because a recovery here would bar a future recovery in another action for future injury caused thereby; and for the further grounds that the damages should relate to the time of the filing of the instrument of appropriation, and that the damage for improper drainage cannot be recovered in this action because such damage grows out of negligence in construction. The real basis of many objections to the introduction of testimony is rooted in the fact that the trial of the exceptions to the award was so long delayed in the circuit court that the railroad was constructed and the witnesses afforded an opportunity to observe the actual—not imaginary—effects the construction had upon the value of appellees' land. In the course of the inquiry observation by the witnesses was often referred to, and really took the place opinion would have held if the trial had occurred before the building of the railroad, but throughout the trial, while considerable latitude was allowed appellees in referring to present conditions, all evidence relating to drainage was clearly limited to the act of appropriation, and as computable of that date.

It has been uniformly held in this State that all damage for rights taken, and resulting to the remaining lands, in

condemnation proceedings, both present and prospective, which are the natural and reasonable incidents of the proposed improvement, assuming that it will be properly and legally constructed in accordance with the instruments of appropriation, must relate to the time of filing the condemnation complaint. The rule is that there can be no fresh damage without a fresh injury. *Chicago, etc., R. Co.* v. *Hunter* (1891), 128 Ind. 213; *White* v. *Chicago, etc., R. Co.* (1890), 122 Ind. 317, 7 L. R. A. 257; *Sherlock* v. *Louisville, etc., R. Co.* (1888), 115 Ind. 22; *Indiana, etc., R. Co.* v. *Allen* (1888), 113 Ind. 308, 3 Am. St. 650. As to the regularity in allowing present conditions to be referred to, in estimating the damage, we shall have occasion to consider hereafter.

The principal contention between the parties is this: Appellant maintains that the destruction or impairment of the drain described, as alleged, by building the railroad embankment across it, was the result of improper construction, and offered appellees a new and additional cause of action for damage that was not assessable in the first instance; while, on the other hand, appellees contend that, the drain being an artificial channel, prepared for the collection and conveyance of surface-water, the railroad company, by its act of condemnation, acquired the right to obstruct it, and to prevent the water that flowed therein from crossing its right of way; and that in assessing the damage resulting to the farm, once for all, it was reasonable to anticipate that the company, in the exercise of its legal rights, would obstruct the ditch, and, therefore, the prospective loss of drainage was a proper element of damage to be considered in making up the award.

This leads to the inquiry whether the ditch was such "a stream of water," or "watercourse," as the company was required to preserve and "restore to its former state." §5153 Burns 1901, §3903 R. S. 1881. The legal distinction between a "stream of water" and

a "watercourse," if any, is shadowy and unsubstantial, and for our purpose it is enough to say that if the drain herein described was not a watercourse it was surely not a stream of water. Was it a watercourse within the meaning of the law? A "watercourse" is a channel cut through the turf by the erosion of running water, with well defined banks and bottom, and through which water flows, and has flowed immemorially, not necessarily all the time, but ordinarily, and permanently for substantial periods of each year. *Weis* v. *City of Madison* (1881), 75 Ind. 241, 253, 39 Am. Rep. 135; *Rice* v. *City of Evansville* (1886), 108 Ind. 7, 58 Am. Rep. 22; *Board, etc.,* v. *Wagner* (1894), 138 Ind. 609; *Mitchell* v. *Bain* (1895), 142 Ind. 604; *New York, etc., R. Co.* v. *Speelman* (1895), 12 Ind. App. 372, 380; *Maxwell* v. *Shirts* (1901), 27 Ind. App. 529, 87 Am. St. 268. "For a watercourse," says Justice Brewer, in *Gibbs* v. *Williams* (1881), 25 Kan. 214, 37 Am. Rep. 241, "there must be a channel and a bed to the stream, not merely lowland or a depression in the prairie over which water flows. It matters not what the width or depth may be, a watercourse implies a distinct channel, a way cut and kept open by running water."

In *Case* v. *Hoffman* (1898), 100 Wis. 314, 72 N. W. 390, 74 N. W. 220, 75 N. W. 945, 44 L. R. A. 728, it is held that mere surface or percolating water does not become a watercourse by being gathered into a ditch and conveyed away; and that such surface currents as do not follow a designated and known channel are not governed by the rules relating to watercourses. The same court further held that the same line of discharge of water, in times of heavy rains and melting snows, from a pond created by the natural assembling of surface-water, did not constitute a watercourse, either when occupying the surface or when artificially lowered. *Fryer* v. *Warne* (1871), 29 Wis. 511, 515. Beyond question it is the law of this State that an artificial channel, constructed solely for expediting surface drain-

age, and which is employed but occasionally and temporarily in collecting and carrying away storm and surface-waters, such waters, only, as proceed from heavy rains or melting snows, is not a watercourse within the meaning of §5153, *supra*. There is no reasonable dispute but that the ditch in controversy was one of this class. It was fed by no spring or watercourse. It contained and carried water only in the wet seasons of the fall and spring, and drew no part of its supply from any body of water, except that which flowed into it from the swale that conveyed surface-water down through the farm of Mr. Burroughs in wet periods. Under the unchallenged evidence the ditch in controversy was simply a surface-water drain. Being such it falls within the doctrine that surface-water is a common enemy which every proprietor may fight and get rid of as best he may. "The owner of the property," says Judge Dillon in

4. 2 Dillon, Mun. Corp. (4th ed.), §1040, "may take such measures as he deems expedient to keep surface-water off from him, or turn it away from his premises." To same effect see *Terre Haute, etc., R. Co.* v. *Stevens* (1881), 73 Ind. 278, 38 Am. Rep. 139; *Taylor* v. *Fickas* (1878), 64 Ind. 167, 31 Am. Rep. 114.

5. Railroad companies have the same right as individuals to throw up barriers against the flowage of surface-water onto or across their rights of way. *Clay* v. *Pittsburgh, etc., R. Co.* (1905), 164 Ind. 439, and cases cited.

6. It follows that appellant had the lawful right to destroy the drain by constructing its embankment across it; and in assessing appellees' damage it was proper for the appraisers to assume that appellant would exercise its legal rights in this respect, and they were thus warranted in considering the obstruction of the ditch, and the consequences to appellees' farm, as proper elements of damage.

The argument that the act of appropriation imposed upon appellant the duty of restoring the ditch across its right of way, and that the failure to do it properly

7. was negligence for which another action would lie, is unsound. The act of condemnation provided, among other things, that it "included the right of said company to take materials (except timber) for the construction and repair of such road, and the right of way over said land sufficient to enable said company to repair and construct said road, and *the right to conduct water by drains, and the right to make proper drains."* These rights, so appropriated, were for the benefit of the appropriating company. The right to construct drains was intended to conserve appellant's interests in draining its right of way; not for the purpose of enabling appellant to drain lands for the benefit of adjoining proprietors.

The ditch was a valuable attribute, or part, of appellees' farm; and, like a dwelling, a barn, an orchard, or other improvement of value to the farm generally, or of

8. special value to a part of it, was subject to condemnation by appellant for the construction of its railroad, upon payment of the damage that the farm, as a whole, would sustain. It was, therefore, clearly proper for appellees to inquire into every item or element of damage to their farm that accrued as a natural and reasonable result of constructing the railroad embankment over the drain in controversy, both present and prospective. So we hold that the motion to strike out that part of the answer, to wit: "The water is backed up from time to time. It was when I was there," was properly overruled.

The fifth cause of complaint is that the court permitted a witness, over objection, to answer the following question: "State the level of the bottom of the tile as com-

9. pared to the bottom of the ditch on the east side. A. Well, I should think about eighteen inches

above." The grounds of objection were that the question called for a condition created since the filing of the articles of appropriation, and the improper placing of the tile was a matter of negligence for which a separate, and subsequent, action for damage would lie.

In this class of cases recoverable damages are the actual damages sustained by the taking, and the present and prospective damages to the remaining premises, to be arrived at in the most practicable and reliable way, and we know no better way of ascertaining such damages than by observing the actual effects upon the premises after the construction of the railroad is accomplished. In such cases it will be assumed that the road has been constructed as contemplated at the time the right of way was appropriated, and that the present, apparent damage would have been reasonably anticipated if assessed before construction. *Witchita, etc., R. Co.* v. *Kuhn* (1887), 38 Kan. 104, 108, 16 Pac. 75. A distinguished author states the proposition thus: "It is apparent that, when a part of a tract is taken, the damages to the remainder can never be satisfactorily estimated without knowing how the works on the part taken are to be constructed. * * * If the works have actually been constructed before the damages are assessed, it has been held proper to take into consideration the actual condition of the works as affecting the damages." 2 Lewis, Eminent Domain (2d ed.), §481, citing *Union R., etc., Co.* v. *Moore* (1881), 80 Ind. 458, and many other cases. The insistence, that the inquiry into the manner of placing the tile through the embankment, and the extent to which the water was thereby set back over the contiguous lands, should have been denied, because it exposed appellant to being mulcted in damage, for an act that would not bar a subsequent recovery for negligence, cannot be allowed.

Appellant having condemned the right to obstruct the ditch, and being under no legal duty to restore it to its

former state, an unsuccessful effort to do so, of itself will not impose a liability for negligence; neither will such effort, if voluntarily taken, furnish appellant with any valid basis to claim a reduction of the damage for the obstruction of the ditch. It is, however, manifest from the record that appellant did receive a very substantial benefit for its effort to make a conduit for the water through its embankment. In answer to an interrogatory the jury stated that, without any provisions being made for the escape of the surface-water from one side of the railroad to the other, the damage to appellees' land would be $3,000, and found by their verdict that the total damage to the farm, including the land taken, was $1,750. The trial seems to have proceeded on the assumption that the railroad was, in all respects, constructed as contemplated by appellant in its act of appropriation, and what appears to have been the real controversy on this point was whether the tile, in size and in the position given it, was adequate to facilitate the escape of the water so as to prevent its being set back over the fields. The fact is, that if all the evidence concerning the tile, which appellant claims was erroneously admitted, had been excluded, and the case given to the jury, with the right for them to anticipate that in the construction of the railroad no provision would be made for the escape of the water across the railroad, appellant might have had greater reason for complaining of the verdict.

A witness was asked to state whether a twenty-four-inch tile, if set at the bottom of the ditch, would be sufficient to pass the volume of water that the ditch would carry down to the railroad embankment, and he answered: "No, sir; I do not think it would. I do not think anything short of a culvert, or four-foot opening, would take the water through." Appellant moved to strike out the answer because it was the statement of the witness's opinion on a matter of fact that belonged to the jury, and not to a witness. The motion was overruled.

Assuming that the testimony was material, we think the evidence was competent. It is the law of this State that a witness will not be allowed to express an opinion upon a subject of which the jury is as well prepared to judge as the witness; or, as generally expressed, he will not be permitted to give his opinion upon the exact question the jury are to decide. *Bonebrake* v. *Board, etc.* (1895), 141 Ind. 62, 64; *Louisville, etc., R. Co.* v. *Donnegan* (1887), 111 Ind. 179, 191; *Indiana, etc., Coal Co.* v. *Buffey* (1901), 28 Ind. App. 108, 115; *Carthage Turnpike Co.* v. *Andrews* (1885), 102 Ind. 138, 142, 52 Am. Rep. 653; Lawson, Expert and Opinion Ev. (2d ed.), pp. 507, 509, 510. But as said in *Loshbaugh* v. *Birdsell* (1883), 90 Ind. 466: "Whenever the subject-matter to which the testimony relates cannot be reproduced, or described to the jury precisely as it appeared to the witness, and the facts upon which an opinion is sought are such as men in general are capable of understanding, then the witness may express his opinion upon such facts." To the same effect it is said in *Yost* v. *Conroy* (1884), 92 Ind. 464, 47 Am. Rep. 156: "Where the matter of which the witness speaks is one which he cannot describe, or which cannot be fairly presented to the jury without an opinion, then opinions are competent, * * * or, where the conclusion is one arising from an observation of facts, the opinions of witnesses may be received."

Mr. Wigmore argues for a much broader rule than we have indicated (3 Wigmore, Evidence, §§1918-1926), and concludes the subject in these words: "The question must be asked on each occasion,—Can the jury be fully equipped by the mere recital of the data, to draw inferences?—In other words, Can all the data be exactly reproduced by mere testimonial words and gestures?"

There is no claim but that the witness was qualified to speak, both as an expert on the subject of drainage, and from personal observation of the premises. Facts, in such

inquiries, are always desirable and should be given to the jury when practicable, but when impracticable resort may be had to trustworthy opinions, formed from experience and observation.

Appellees' land lay in a flat and marshy district. The extent of the water-shed that supplied the ditch was large, irregular and unknown, and could only be ascertained by a civil engineer. The fall of the water in its descent to the ditch, the obstructions on the surface and the character of the soil, were all matters to be considered in determining the sufficiency of the twenty-four-inch tile, and however clear and fortunate the witness might have been in describing the facts and conditions it is not at all probable that the jury were all sufficiently qualified from experience, or observation in similar affairs, duly to appreciate all the material facts when proved. While, on the other hand a witness who had had extended experience in observing and studying such things might, upon actual view, form an opinion that would reasonably approach exactness. *Heick* v. *Voight* (1887), 110 Ind. 279.

As a basis of opinions expressed as to the value of the land, before and after, witnesses were permitted, among other things, to describe the character of the soil 14. and to name the various crops to which it was adapted, and this action of the court forms six separate exceptions. Since witnesses are permitted, from necessity, to express their opinions as to values in such cases, it seems impossible that a valid reason can be brought against the giving of the grounds of such opinions as a means of informing the jury of their reasonableness. And such is the current of authority. *Dickenson* v. *Inhabitants of Fitchburg* (1859), 13 Gray 546; *Chicago, etc., R. Co.* v. *Town of Cicero* (1895), 154 Ill. 656, 39 N. E. 574; *McClean* v. *Chicago, etc., R. Co.* (1885), 67 Iowa 568, 25 N. W. 782; *Missouri Pac. R. Co.* v. *Dulaney* (1888), 38 Kan. 246, 16 Pac. 343; *Sexton* v. *Inhabitants of North*

*Bridgewater* (1874), 116 Mass. 200; *Burt* v. *Wigglesworth* (1875), 117 Mass. 302; *Hawkins* v. *City of Fall River* (1875), 119 Mass. 94; 2 Lewis, Eminent Domain (2d ed.), §435; *St. Louis, etc., R. Co.* v. *Lyman* (1893), 57 Ark. 512, 22 S. W. 170; *Chicago, etc., R. Co.* v. *Kern* (1894), 9 Ind. App. 505.

The cutting of fields into inconvenient shapes, the interruption of convenient ways for animals to pass from the farm buildings to and from pasture and the necessity for additional fencing, are elements of damage, and may be properly inquired into, in a case like this. *White Water Valley R. Co.* v. *McClure* (1868), 29 Ind. 536; *Baltimore, etc., R. Co.* v. *Lansing* (1875), 52 Ind. 229; *Chicago, etc., R. Co.* v. *Hunter* (1891), 128 Ind. 213. The increased hazard from fire being set by passing locomotives is also a proper consideration for the jury in estimating the damage. *LaFayette Plankroad Co.* v. *New Albany, etc., R. Co.* (1859), 13 Ind. 90, 74 Am. Dec. 246; *Swinney* v. *Ft. Wayne, etc., R. Co.* (1877), 59 Ind. 205; *LaFayette, etc., R. Co.* v. *Murdock* (1879), 68 Ind. 137.

Exception is also taken to the refusal of the court to give to the jury its request number one, relating to the duty of the jury in weighing the opinions expressed by witnesses as to the value of the land, before and after. We perceive no valid objection to the instruction, and it is quite evident that the court's refusal was on the ground that the same subject-matter was fully covered by instruction four, given of the court's own motion, and three, given upon request of appellees. Considering the instructions as a whole, as is our duty, we are of the opinion that the instruction refused was substantially given, as above noted, and that no reversible error was committed.

Divers other objections to the giving and refusal of instructions are presented, but such objections have all been disposed of adversely to appellant, by what has been said in former parts of this opinion.

We find no error in the record. Judgment affirmed.