(No. 12377.—Decree affirmed.)

RUDOLPH WINHOLD et al. Appellees, vs. JOHN FINCH,
Appellant.

*Opinion filed February 20, 1919.*

1. EASEMENTS—*natural water-course does not cease to be such
because channel has been plowed out.* A natural water-course does
not cease to be such because a channel has been plowed out, and
if the conformation of land is such that the surface water uni-
formly follows a definite course, within reasonable limits as to
width, and is discharged upon servient land at a definite place,
the line of flow is a water-course within the meaning of the law.

2. INJUNCTION—*to justify injunction the injury need not be im-
possible of compensation in damages.* Although an actual and sub-
stantial injury must be shown to justify relief by injunction, the
irreparable injury necessary to give a court of equity jurisdiction
is not one so great as to be impossible of compensation in dam-
ages but is one of such a character that the law cannot give ade-
quate compensation for it.

3. SAME—*right of a property owner to remedy by injunction.*
Where an owner of property is about to be deprived of a legal
right in connection with the property by the wrongful act of an-
other for which there is no legal redress the act may be restrained
by injunction, or, if it has already been executed, it may be re-
quired to be undone, if this is practicable.

4. SAME—*an injury of frequent occurrence may be enjoined.*
Where an injury is of such constant and frequent occurrence that
no fair or reasonable redress can be had for it in a court of law
it may be enjoined.

APPEAL from the Circuit Court of Cass county; the
Hon. GUY R. WILLIAMS, Judge, presiding.

THOMAS D. MASTERS, and CHARLES A. GRIDLEY, for
appellant.

DIETERICH & HEDGECOCK, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellees, Rudolph Winhold and others, filed a bill
in the circuit court of Cass county against John Finch for
an injunction requiring him to remove an obstruction from

a certain water-course.  From a decree granting the relief prayed for, the defendant has appealed.

The appellees owned the southeast quarter of the northeast quarter and the appellant the southwest quarter of the northeast quarter and the southeast quarter of the northwest quarter of section 7, town 17, north, range 11, west of the third principal meridian.  A ditch extended across the appellees' tract from the east down through the eighty-acre tract of the appellant to Clear creek.  In December, 1916, the appellant obstructed this ditch by the erection of an embankment about fifteen inches high across it, near the place where it crossed the boundary line between his land and the appellees'.  He contends that the court erred in requiring him to remove this obstruction, because there was not a natural water-course through the lands of the appellant and the appellees, because the embankment was built by the mutual agreement of the appellant and the appellees, and because it was not shown that the embankment had produced or would produce any substantial damage to the appellees' land.

A road came from the south to the south end of the division line between the land of the appellant and the appellees where it turned west on the half-section line between the appellant's eighty acres and another tract belonging to Eugene Winhold.  Previous to 1916 Sand branch crossed the north and south road from the west side to the east about a quarter of a mile south of the half-section line and continued north on the east side of the road to the corner, where the road turned west.  There it connected with a ditch running north to the ditch through the appellant's and appellees' land, which has been already mentioned and is called in the record ditch No. 1.  The ditch from the south is called in the record ditch No. 2, and the two came together at the boundary lines of the appellant's and appellees' land.  In 1916 Eugene Winhold, one of the appellees, (who owned the eighty acres immediately south of the ap-

pellant's eighty acres but with the road between them,) the appellant and the highway commissioners agreed to divert Sand branch so that it should not cross the road but should continue north on the west side of the road to the corner, and then west on the south side of the road in a ditch to be constructed by the commissioners to a point near the southwest corner of the appellant's eighty, from which the appellant was to construct a ditch to an outlet at his own expense. This was all done, and at the same time the highway commissioners made a ditch on the north side of the road from the corner west to the ditch constructed by the appellant. This ditch is known in the record as ditch No. 3. This ditch did not connect at its east end with ditch No. 2, and the south end of the latter ditch is about a foot higher than the north end, where it connects with ditch No. 1. Just before appellant constructed the embankment across ditch No. 1 he made a connection also between ditch No. 2 and ditch No. 3.

The appellees' land slopes toward ditch No. 1 from both sides. Their land is above the appellant's, and the ditch has a fall of about two and one-half feet in crossing their land and about two feet in a quarter of a mile after entering the appellant's land. It was the only outlet for the waters of Sand branch before they were diverted to the south side of the road as well as of three hundred acres of land which drained into the appellees' forty acres. The ditch had been there beyond the memory of any of the witnesses who testified, which was thirty or forty years or more. It had been plowed out, but there is no evidence as to when it was first plowed. The water naturally flowed to that line. Whether it had worn a channel does not appear, for the channel was there prior to the memory of any witness. A natural water-course does not cease to be such because a channel has been plowed out. If the conformation of land is such that the surface water uniformly follows a definite course, within reasonable limits as

to width, and is discharged upon servient land at a definite place, the line of flow is a water-course within the meaning of the law. *Lambert* v. *Alcorn*, 144 Ill. 313; *Ribordy* v. *Murray*, 177 id. 134; *Town of Bois D'Arc* v. *Convery*, 255 id. 511.

The appellant insists, and introduced witnesses to prove, that the appellees' land was low, wet and swampy, and for many years, in times of heavy rainfall and freshets, water stood upon a large part of the appellees' land in stagnant pools or ponds, and only when it had reached a great height would any of it flow slowly through the ditch on the appellant's land, and that at various points along the ditch on the appellant's land there were ridges or banks higher than points to the east, which prevented water from flowing through the ditch and caused it to spread out over the appellant's land and collect in pools. On the other hand, the appellees introduced evidence to show that while there were two natural depressions in the appellees' land in which water would stand, the effect of the obstruction of the ditch was to overflow the west part of the forty acres to the depth of a foot or more, to prevent the escape of the water which could not flow south through ditch No. 2 and west through ditch No. 3 until it had reached a depth sufficient to overcome the slope of ditch No. 2 in the opposite direction, and that thus water was retained upon several acres of the appellees' land much longer than if the obstruction had not existed in ditch No. 1, and that there were no places in the appellant's land higher than the east end of the ditch which would cause the water to collect on the appellant's land and remain there in stagnant pools.

The appellant contends that he had an agreement with Eugene Winhold, one of the nine appellees, made in the presence of Bode Winhold, another of the appellees, that if the highway commissioners would divert Sand branch to the south side and cut a ditch from the east end of the road on both sides down to where it came across the ap-

pellant's field, the appellant would dig a new ditch to take the place of the old one at his southwest corner and maintain it, and would put a levee on the upper side of his field,—that is, the side next the appellees' land,—and would agree that the water should go down the road, and would do away with the ditch in the middle of the appellant's eighty. The appellant testified that this agreement was made; that the highway commissioners assented to it, diverted Sand branch and constructed the two ditches, and that he constructed the ditch he agreed to and put in the embankment pursuant to this agreement. The agreement about the ditch on the north side of the road and the embankment on the appellant's east line is denied by Eugene Winhold and Bode Winhold. The commissioners all testify that they were not asked to construct a ditch on the north side of the road. One of them testified that the reason the ditch was excavated there was to get dirt to grade the road.

The evidence of the complainants as to the damage to their land was to the effect that more of their land was overflowed and for a longer time after the embankment was built, in spite of the fact that the exclusion of the water from Sand branch reduced the amount of water coming on the appellees' land, and that the obstruction was the cause of the damage. It is contended by the appellant that the appellees were not entitled to an injunction because there was no evidence of substantial damage to their land. If the evidence of the appellees, alone, is considered it would sustain findings that their land is capable of farming and cultivation and that crops can be and have been raised on it; that by reason of the obstruction of the water-course a part of the land has been overflowed, even after the diversion of the water from Sand branch, to a depth of a foot or more, and that such condition continued for a longer time than it would have lasted but for the obstruction; that such condition will be repeated from time

to time and will reduce the crops which can be raised on the land, and, if it is permanent, the value of the land. It is true that to justify relief by injunction an actual and substantial injury must be shown, as was held in *Girard* v. *Lehigh Stone Co.* 280 Ill. 479, and *Dunn* v. *Youmans, 224* id. 34, but this does not mean that the injury must necessarily be great in the pecuniary loss involved or impossible of compensation in damages. When an owner of property is about to be deprived of a legal right in connection with it by the wrongful act of another for which there is no legal redress the act may be restrained by injunction, or, if it has already been executed, may be required to be undone, if this is practicable. The irreparable injury necessary to give a court of equity jurisdiction in such a case is not one so great as to be impossible of compensation, but one of such a character that the law cannot give adequate compensation for it. "The fact that no actual damages can be proved, so that in an action at law the jury could award nominal damages, only, often furnishes the very best reason why a court of equity should interfere in a case where a nuisance is a continuous one." (Elliott on Roads and Streets, 497; *Newell* v. *Sass,* 142 Ill. 104.) Where an injury is of such constant and frequent occurrence that no fair or reasonable redress can be had for it in a court of law it may be enjoined. *Chicago General Railway Co.* v. *Chicago, Burlington and Quincy Railroad Co.* 181 Ill. 605.

The questions as to the existence of a natural watercourse, the terms of the agreement and the damages to the appellees' land were all questions of fact depending upon the testimony of witnesses heard by the chancellor in open court, and in our judgment the decree is in accordance with the weight of the evidence.          *Decree affirmed.*