De Luxe Motor Cab Company et al., Defendants in Error, v. William E. Dever, Mayor of City of Chicago, et al., Plaintiffs in Error.

Gen. No. 33,169.

Opinion filed March 11, 1929. Rehearing denied March 25, 1929.

SAMUEL A. ETTELSON, Corporation Counsel, for plaintiffs in error; JAMES I. McCARTHY, Assistant Corporation Counsel, *pro se* and ROY S. GASKILL, of counsel.

STEBBINS, L'AMOREAUX & HURTUBISE, for defendants in error; J. E. HURTUBISE and PAUL C. L'AMOREAUX, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

By this writ of error the defendants seek the reversal of a decree which *inter alia* enjoined them from prosecuting certain drivers of taxicabs charged with violating the Illinois Motor Vehicle Act and one of the ordinances of the City of Chicago in operating cabs without a city license.

Complainant's bill also prayed for a mandatory order requiring the mayor of Chicago to issue and deliver to the De Luxe Motor Company 200 vehicle licenses duly licensing 200 taxicabs to operate for hire on the streets of Chicago. A temporary injunction was ordered and the cause was referred to a master in chancery who took proof and reported the same with his conclusions and recommendations, and the decree followed his conclusions.

Defendants assert that the reason the De Luxe Motor Cab Company (hereafter called complainant) was refused the licenses was that it was not the actual owner of the cabs for which licenses were sought. This is the crucial question involved. If complainant is not the owner within the meaning of the State statute and the

Municipal Code, the decree should be reversed. If, on the contrary, complainant is the owner, the decree should be affirmed.

The master found that the complainant, about July 23, 1925, bought the auto taxicabs and received bills of sale for them; that at the time of the filing of the bill it was the owner of 310 cabs, 60 of which were operated in Kalamazoo, Michigan, and the balance in Chicago; that their approximate value, with other personal property of complainant, was about $500,000; that Joseph F. DeGraff and William Merkel, named as complainants, are each drivers of the De Luxe Motor Cab Company and are joined with complainant company in a representative capacity; that complainant entered into a contract with its various drivers in which it was described "for convenience as the lessor" and the driver operating the cab as "the lessee." The contract provided that the lessee would pay the lessor a certain stipulated price per day for the use of the cab and also the expenses of operating the same, such as gas, oil, repairs, etc. It also provided that the lessee should pay a certain amount down when the contract was signed and give his note for a certain amount, and when the lessee had paid to the lessor the sum agreed upon, pursuant to the provisions of paragraph 2 of the contract, the lessor agreed to accept in full payment of the cab the sum of one dollar, and the lessee would then be entitled to a bill of sale for the cab; that at the time the prospective employee or driver applied to the complainant company for a position, he filled out an application furnished by the company and if he was accepted as an employee, he signed the lease contract and also a copy of the rules and regulations of the complainant company closely printed on both sides of a sheet of paper, which were to be followed by the driver, and stating that it was made a part of the lease of the cabs and binding on the drivers.

The master also found that complainant had paid the City of Chicago the vehicle license fees on approximately 200 cabs, receiving receipts on the same which recited that the city had received from the De Luxe Motor Cab Company the vehicle license fees for the license year 1927, in accordance with the provisions of the city ordinances, which receipts were signed by the mayor and city clerk. The master also found that in December, 1926, complainant paid to the Secretary of State $2,424 for 303 license plates, as per application, and that the Secretary of State issued the plates to complainant; that complainant made an application for the approval by the Secretary of State of the bonds or policies of insurance tendered under the provisions of the Illinois Motor Vehicle Law, which application gives the De Luxe Motor Cab Company as the owner operating the respective vehicles, together with the address and garage number in Chicago and all the other required details with reference to engine number, model, horse power, date of purchase, etc.; said application also stated that the De Luxe Motor Cab Company was the owner and operator of the respective cabs; that the complainant furnished the required bonds with the New York Casualty Company as surety to the Secretary of State of Illinois for each of the 205 cabs, providing in each instance a penal sum of $2,500 running to the People of the State, in conformity with the various sections of the Motor Vehicle Law of Illinois, and filed the same in the office of the Secretary of State. To guarantee the surety company for furnishing the bonds the complainant deposited with it a total of $22,500 as collateral and also paid said surety company premiums for furnishing the bonds at various dates of approximately $20,000.

In the early part of January, 1927, complainant applied to the city collector's office of Chicago for 200 cab-stand licenses and tendered the required fees for

the same, and also applied to the secretary of the Public Vehicle License Commission of Chicago for said licenses, which licenses were refused. Subsequently a letter was received by the complainant company from the secretary of the Public Vehicle License Commission stating, in substance, that the reason for refusing the licenses was that investigation had developed that the De Luxe Motor Cab Company ''is the lessor and not the operating owner of any public vehicle.'' The master found that the tender of the required amount of fees for the licenses was made and kept good by the complainant.

The master also found that after various conferences between the attorneys for the complainant and the attorney representing the city, in which the complainant was informed that the city was interested only in the protection accorded the public, the attorney for the complainant informed the city's representative that, if the arrangement then existing with complainant's drivers did not contemplate such protection they would devise some plan which would effect this. Subsequently, about February 12, 1927; complainant made a new form of contract with its drivers, by the terms of which complainant agreed to employ the driver and the driver accepted employment on the terms and conditions contained in the contract. The company agreed to allot to the driver a certain taxicab, giving the number and detailed description of the same, to be operated by the driver as a taxicab for hire in the City of Chicago during the life of the cab, the complainant company to cause said cab to be duly licensed and bonded in accordance with the ordinances of the City of Chicago and the State laws. The driver agreed to make certain payments for the use of the cab and to keep and obey the rules and regulations of the company, a copy of which was attached to the contract of employment.

The master also found, and it is not disputed, that a number of the drivers were arrested and some of them rearrested several times and charged with operating their vehicles without the required city license. The master found that all of the cabs driven by the drivers arrested were properly bonded with the Secretary of State, as required, and that each of said cabs was duly licensed under the State Motor Vehicle Law; that the complainant duly applied to the proper department of the City of Chicago for the licenses required for cab-stand licenses, tendering the proper fees and keeping said tender good; that the name properly appearing on the doors of the taxicabs is the ''De Luxe Motor Cab Company''; that proper application for the licenses was made but illegally refused; that complainant has at no time contended that it was not the owner of the cabs where damage suits were brought on account of accidents; that the so-called lease contracts between it and the drivers did not release the complainant from responsibility and liability to the public on account of accidents.

The master further found that the business of the complainant was irreparably damaged by the arrests and that should said arrests continue complainant would suffer greater damages and that said arrests were illegal and unwarranted. The master concluded that legally the relationship of master and servant existed between complainant company and its drivers under the contracts above described since February 12, 1927, on which date all the drivers of the complainant company signed said contracts and that so far as the public or third persons were concerned the relationship of master and servant existed between complainant company and its drivers under the so-called lease contract used prior to February 12, 1927. The master found that the complainant company was the owner of the cabs in question and had complied with all the re-

quirements of the Motor Vehicle Laws of the City of Chicago concerning motor vehicles for hire and recommended that the prayer of the bill of complaint be granted.

We are of the opinion that the record justified the findings and conclusions of the master and the decree entered in accordance with his recommendations. We hold that complainant company owned the cabs in question within the meaning of section 42a of the Motor Vehicle Act, Cahill's St. ch. 95a, ¶ 44, and section 3917 of the Chicago Municipal Code. The statute provides, in substance, that it should be unlawful for any person, firm or corporation to operate any motor vehicle on the streets for hire unless there shall be on file with the Secretary of State "a bond of the owner of said motor vehicle" with a responsible surety company. Each of the bonds should be conditioned "that the owner of said motor vehicle" will pay all final judgments recovered against such owner for any injury to or death of any person resulting from the negligence of "such owner or his agent" in the operation of such vehicle. Section 3917 of the Chicago Code provides that applications for licenses for public vehicles shall be made by "the owner."

The word "owner" usually signifies one who has the legal or rightful title, but this is not always the sense in which it is employed. It is not rigid in meaning, especially in ordinances and statutes, and frequently is used to denote one in control but having less than the absolute title. The meaning usually depends, in great measure, upon the context and the subject matter to which it is applied; in statutes defining duties of railroads and fixing a penalty against the corporation "owning the railroads" or exacting requirements of companies "owning the tracks" it has been held that the corporation in control of or operating the railroad, though simply a lessee of the property, is an "owner"

within the meaning of such statutes. *State for use of Ray County v. St. Joseph, St. L. & S. F. R. Co.,* 46 Mo. App. 466; *Baltimore & O. R. Co. v. Walker,* 45 Ohio St. 577; *Chicago, R. I. & P. R. Co. v. State,* 84 Ark. 409.

Having in mind the object of our statute and the ordinance, which is to protect any of the public who may sue to recover damages for injuries received in or by public vehicles, we have little difficulty in arriving at the conclusion that the complainant company is the owner of the vehicles in question and that it may be subjected to the payment of damages where a person recovers a judgment for injuries received through the negligence of one of its drivers. It is not necessary to determine with nicety the precise legal relations between the complainant and its drivers. The important point is the relation of complainant to the public. One of the factors strongly supporting our conclusion is the requirements of the rules and regulations which the drivers must accept as a condition of employment; these prescribe in almost every conceivable particular their duties with reference to their personal habits, clothing, manners, how to manage the cabs and also their conduct towards passengers. If found guilty of the violation of any of the rules, the company has the right to determine and impose a penalty upon the violator. These rules and regulations are inconsistent with any claim that the driver is merely a lessee or the owner of the vehicle.

It may be pertinent to suggest that if we are affirmed in our conclusion that the complainant is liable as owner to respond in damages caused by the negligence of its drivers, complainant could hardly, in any suit at law, plead nonownership of the vehicle in the face of this decision.

Defendants argue that a court of equity has no jurisdiction to interfere with the public duties of the departments of government; that its jurisdiction per-

tains only to questions involving property rights. Undoubtedly under certain limited circumstances this is the rule; but here we have a broad situation involving not only property rights but the rights of many individuals. The record shows that police officers of the City of Chicago arrested a large number of the complainant's drivers; at one time 6 drivers were arrested whose cases were not tried; again, some 17 drivers; at another time, on a holiday, 26, and at another time 34 men. Under such circumstances a court of equity will assume jurisdiction on the ground that the determination of the equity proceeding will prevent a multiplicity of suits. In *Clark Teachers' Agency v. City of Chicago,* 220 Ill. App. 319, another division of this court had under consideration a bill in equity filed to enjoin the enforcement of an ordinance providing that certain employment agencies should pay license fees. The court held that there were 348 agencies affected and that if the city officials were not enjoined they would close up all of these agencies and that their business would be substantially destroyed. It was there held, after citation and consideration of a number of cases, that under such circumstances a court of chancery to avoid a multiplicity of suits has jurisdiction to settle the controversy at one hearing. The reasoning which moved this court in that case is controlling in the instant case.

. Defendants argue that no irreparable injury or damage is shown. It is obvious that the continued arrest of complainant's drivers and interference with the operation of their vehicles would have the inevitable effect of destroying their business. Passengers would not venture to ride in cabs whose drivers would be constantly subject to arrest.

"Irreparable injury, as a ground for injunction, is that which cannot be repaired, returned, put back again, atoned for. . . . 28 Fla. 387; it does not necessarily mean that the injury is beyond the possibility of

compensation in damages, nor, that it must be very great. *Newell v. Sass,* 142 Ill. 104.'' Bouvier's Law Dictionary, vol. 2, p. 1683.

''To justify injunction the injury need not be impossible of compensation in damages. Although an actual and substantial injury must be shown to justify relief by injunction, the irreparable injury necessary to give a court of equity jurisdiction is not one so great as to be impossible of compensation in damages, but is one of such a character that the law cannot give adequate compensation for it.'' Syllabus 2 in *Winhold v. Finch,* 286 Ill. 614.

''But by irreparable injury is not meant that the injury is beyond the possibility of repair by money compensation, but it must be of such a nature that no fair and reasonable redress may be had in a court of law and that to refuse the injunction would be a denial of justice.'' High on Injunctions, vol. 1, sec. 22.

It is apparent that complainant had no complete or adequate remedy at law, and this is sufficient to entitle it to come into the equity court.

The decree has our approval and is affirmed.

*Affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.