## GASKILL v. BARNETT.

[No. 7,867.    Filed March 6, 1913.]

1. WATERS AND WATERCOURSES.—*Natural Watercourse.*—A natural watercourse is a channel, cut through the turf by the erosion of running water, with well defined banks and bottom, through which water flows, and has flowed immemorially, not necessarily all the time, but ordinarily, and permanently for substantial periods of each year.    p. 658.

2. WATERS AND WATERCOURSES.—*Surface Waters.*—The rules relating to watercourses are not applicable to surface currents that do not follow a designated and known channel.    p. 658.

3  WATERS AND WATERCOURSES.—*Natural Watercourse.—Drainage of Surface Water.—Artificial Channels.*—The same line of discharge of water in times of heavy rains or melting snows, from a pond created by the natural assembling of surface water, does not constitute a natural watercourse, and neither does an artificial channel, constructed solely for the purpose of expediting surface drainage, which is employed but occasionally and temporarily in carrying away an excess of surface water caused by heavy rains or melting snows.    p. 658.

4. WATERS AND WATERCOURSES.—*Surface Waters.*—Surface water is a common enemy which every proprietor may fight and ward off his premises by dams, embankments or other available means constructed or used on his own property.    p. 659.

5. WATERS AND WATERCOURSES.—*Natural Watercourse.—Artificial Drains.*—While it is the law that a natural watercourse, which is lost in a swamp or lake and emerges therefrom at a lower level in a well defined channel, does not cease to be a watercourse because it passes through such swamp or lake, the rule is not applicable to a drain which leads into and emerges from a pond, so as to render one who closes the same liable for the obstruction of a natural watercourse, although in addition to surface drainage it carries the water from springs located above such pond, where it is shown that such pond was closed by the natural elevation of the land and had no connection with such springs, nor with a natural channel and bayou to the south, and that prior to the construction of such drain water stood in such pond until evaporated.    p. 659.

6. WATERS AND WATERCOURSES.—*Surface Waters.—Obstruction.*—Where, in an action for the obstruction of a drain, it is shown that the former owner of defendant's land opened a channel from a basin on his land to connect with a gulley a short distance south of his north line, and that the owner north of such

line made a ditch down to the line to connect with such basin, and that each owner from time to time cleaned out the channel on his land, such facts, in the absence of some agreement at the time the channel was made, do not establish an easement by which the plaintiff may flow water through the channel on defendant's land, but merely show a permissive use. p. 659.

7. EASEMENTS.—*Easements by Prescription.*—A mere permissive use is insufficient to establish a prescriptive right to an easement, but, to be sufficient, the use must be shown to be adverse, under a claim of right, continuous and uninterrupted for twenty years. p. 660.

8. WATERS AND WATERCOURSES.—*Drainage of Surface Water.— Easement.—Extent of Right.*—Even if one has acquired an easement to flow water from a pond through a ditch on his land into a channel on the land of an adjoining owner, such right will not authorize him to wrongfully accumulate additional water and turn it through such ditch onto the lands of such adjoining owner. p. 660.

From Greene Circuit Court; *Charles E. Henderson,* Judge.

Action by John A. Gaskill against Clarence C. Barnett. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*W. L. Slinkard,* for appellant.

*Cyrus E. Davis* and *Fred E. Dyer,* for appellee.

FELT, P. J.—Appellant filed suit against appellee in two paragraphs of complaint. The first paragraph is for damages alleged to have been caused by appellee's construction of a dam across a natural watercourse, and for a mandatory injunction to compel the removal of said obstruction. The second paragraph seeks damages for the obstruction of an easement, and also to quiet title thereto. Issues were joined by a general denial, and the cause was tried by the court. On request the court made a special finding of facts and stated its conclusions of law thereon, to which appellant duly excepted. The only error assigned is that the court erred in its conclusions of law.

The substance of the finding of facts is as follows: That plaintiff and defendant are the owners of adjoining farm

lands in Greene county, Indiana; that the lands of plaintiff lie north and east of those of defendant, and there is a public highway running north and south on the west side of said lands; that all of said real estate was formerly owned by James Foster; that he is the remote grantor of defendant, and the immediate grantor of plaintiff; that there is a spring on the farm adjoining that of plaintiff on the north; that leading southwest from said spring there is a depression in the ground, with well-defined banks through which the water from said spring runs, the year round, until it reaches another spring on plaintiff's land; that at a point "about 21 rods north of the line dividing the lands of the plaintiff and the defendant, the water coming from said springs and surface water spread out and made a pond at times covering as much as two acres and would extend westward and overflow a highway running north and south, until the building of a certain free gravel road along said highway, after which the embankment made by the free gravel road prevented the water from crossing the said road, and the said pond stood there until evaporated;" that said basin or pond extends below the line dividing the lands of plaintiff and defendant about 75 feet on the land of the latter; that defendant purchased his land from one Maxwell, who in 1897 dug a ditch with well-defined banks, from the point where the water came from plaintiff's land onto that of defendant, and continued the same in a southeasterly direction for a considerable distance to a bayou, and from thence the water continued on to White river through a natural channel; that the water so carried was surface water, except in wet seasons the water from said springs was intermingled with the surface water; that said depression was closed by the elevation of the ground so as to form a basin, and in rainy seasons was a pond of water; that from the point where said depression crosses the line between the lands of said parties, plaintiff constructed a ditch north across said basin on his lands for a distance of about 20 rods; that he

also made a roadway on his land just north of said dividing line, and constructed a bridge thereon across said ditch; that the ditches aforesaid on each of said tracts of land were kept open by the respective owners thereof until June 24, 1908, when defendant constructed on his own land a dam across said ditch to the height of about three feet, and thereby filled the ditch and shut off the flow of said surface water and the spring water when mingled therewith, as aforesaid, and backed the same onto the lands of plaintiff, to his damage in the sum of $50; that when defendant purchased his said lands said ditches were open, visible and connected, and carried off the surface water, and the spring water when mingled therewith; that water from said springs, except when mingled with surface water as aforesaid, did not at any time reach the point where the water spread out and formed the aforesaid pond; that the water from said springs was and is insufficient, unaided by surface water, to make a flowing stream reaching down to said basin; that the water which reached the line dividing the lands of plaintiff and defendant was surface water; that said low land, or basin, on plaintiff's land was cleared in 1893, and since that time has been cultivated and crops raised thereon in reasonably dry seasons; that plaintiff has made and kept open a deep furrow in the lowest part of said basin, down to his south line, which has greatly facilitated the flow of water out of said basin, and cast the same on defendant's lands in larger quantities than would have resulted from the natural drainage of the land without such furrow; that there are no banks or shores of any stream or current through said basin, other than the furrow aforesaid, which made a ditch varying in depth from six inches to two feet; that said ditch carries no water except in times of heavy rain; that for three years last past plaintiff has maintained on his land a private driveway, and used it largely for the purpose of hauling gravel from a pit on his land to the highway on the west

thereof; that the wagons have worn trenches in the ground through which water has run into said ditch or furrow across said depression, that formerly spread out over the land without flowing into said basin; that said gutters have collected, and emptied into said furrow or ditch, and from there onto defendant's land, water in greater quantities than that which came from the natural drainage of the land; that plaintiff at various times, when said gutters in said roadway were obstructed used shovels and opened them up so as to drain the water therefrom into said cross furrow or ditch, from which it passed to defendant's land; that the deepest portion of said basin is on defendant's land, and the natural drainage of the land, north, east and west thereof, has from time immemorial been into said basin; that from a point about 21 rods south of said dividing line there is a natural gulley or channel leading to said bayou, and thence to White river.

A natural watercourse is a channel, cut through the turf by the erosion of running water, with well-defined banks and bottom, through which water flows, and has 1. flowed immemorially, not necessarily all the time, but ordinarily, and permanently for substantial periods of each year. *New Jersey, etc., R. Co.* v. *Tutt* (1907), 168 Ind. 205, 211, 80 N. E. 420. Surface currents that 2. do not follow a designated and known channel are not governed by the rules relating to watercourses.

The same line of discharge of water in times of heavy rains or melting snows, from a pond created by the natural assembling of surface water, does not constitute a 3. natural watercourse. Neither does an artificial channel, constructed solely for the purpose of expediting surface drainage, which is employed but occasionally and temporarily in carrying away an excess of surface water, caused by heavy rains or melting snows, constitute a natural watercourse, but must be deemed a surface water drain. *New Jersey, etc., R. Co.* v. *Tutt, supra,* 211, 212; *Cleveland,*

*etc., R. Co.* v. *Huddleston* (1899), 21 Ind. App. 621, 625, 52 N. E. 1008, 69 Am. St. 385.

Surface water is a common enemy which every proprietor may 'fight and ward off from his permises by dams, embankments or other available means constructed or used on his own property. *New Jersey, etc., R. Co.* v. *Tutt, supra,* 212; *Benthall* v. *Seifert* (1881), 77 Ind. 302, 304; *Shelbyville, etc., Turnpike Co.* v. *Green* (1885), 99 Ind. 205, 215.

The facts found by the court show conclusively that there was no ancient and natural watercourse on appellant's land for more than 20 rods above the dividing line aforesaid, and for more than that distance south of that line on the lands of appellee. The basin or pond above described is shown to be closed at both its north and south termini by the natural elevation of the land, and to have no connection with the springs above, or with said natural channel and bayou south thereof; that before any artificial drains were constructed, water stood in said basin until it evaporated or was absorbed by the earth. It is the law, as claimed by appellant, that a natural watercourse which is lost in a swamp or lake and emerges therefrom at a lower level in a well-defined channel does not cease to be a watercourse because it passes through such swamp or lake. *Mitchell* v. *Bain* (1895), 142 Ind. 604, 42 N. E. 230. But the facts found in this case do not bring the drain in question within the rule so declared, but, on the other hand, show that there is no natural watercourse which either enters or emerges from the basin or depression above described, and that prior to the construction of the gravel road on the west of said lands the excess of water from said basin drained to the west across the road.

But appellant contends that the facts show that he has acquired an easement by which he has the right to flow water through the artificial channel obstructed by appellee. The facts found do not show any agree-

ment or arrangement of any kind between the owners of the two tracts of land at the time said artificial channel was made. All that appears is that the former owner of appellee's land opened a channel from said basin on his land to connect with a natural gulley or channel about 21 rods south of his north line, and that the owner of the land north of said dividing line made a furrow or ditch down to the line, and that each owner from time to time cleaned out such channel on his farm. At most the proprietor of the land north of the dividing line had only a permissive use of the drain south of the line for a few years.

To acquire a prescriptive right to an easement, something more must be shown than a mere permissive use. In the absence of an agreement, or grant of the easement, where the right is claimed to have been acquired by user, the use which will establish such prescriptive right must be shown to be adverse, under a claim of right, continuous and uninterrupted for twenty years. Such use for such time is in law equivalent to a grant. *Parish* v. *Kaspare* (1887), 109 Ind. 586, 10 N. E. 109; *Nowlin* v. *Whipple* (1889), 120 Ind. 596, 598, 22 N. E. 669, 6 L. R. A. 159; *Connor* v. *Woodfill* (1890), 126 Ind. 85, 25 N. E. 876, 22 Am. St. 568; *Null* v. *Williamson* (1906), 166 Ind. 537, 547, 78 N. E. 76; *Gascho* v. *Lennert* (1912), 176 Ind. 677, 97 N. E. 6.

The facts found do not show any prescriptive right authorizing appellant to collect water by artificial drainage and cast it on the land of appellee in a manner that accelerates the flow and increases the quantity of the water that is thus brought upon his land.

Furthermore, the facts found show that subsequent to the opening of said drain across said pond, appellant opened a roadway, along his south line, and by means of gutters worn in the road conveyed a large amount of water into the ditch and onto appellee's land that otherwise would not have drained into such channel. If it were con·

ceded that he had acquired the right to flow water from said pond through the ditch he constructed on his land and empty the same into the channel on appellee's land, such right would not authorize him to wrongfully accumulate additional water and pour it upon appellee's land, and by so doing he has placed himself in a situation that to grant him the relief prayed would enable him to profit by his own wrong. This the courts will not do. *McAllister* v. *Henderson* (1893), 134 Ind. 453, 34 N. E. 221.

The trial court did not err in its conclusions of law, and the judgment is therefore affirmed.

NOTE.—Reported in 101 N. E. 40. · See, also, under (1, 5) 40 Cyc. 553; (2) 40 Cyc. 640; (3) 40 Cyc. 554; (4) 40 Cyc. 642; (6, 8) 40 Cyc. 649; (7) 14 Cyc. 1151. As to right of landowner to diminish or accelerate flowage to or from lands of his neighbor, see 85 Am. St. 708. As to surface waters and the right of lower proprietor to obstruct flow, see 16 Am. St. 710. As to the distinguishing character of watercourse, see 1 L. R. A. (N. S.) 756. For watercourse as distinguished from surface water, see 25 L. R. A. 527. As to the acquisition by an artificial stream of the character of a natural watercourse, see 14 Ann. Cas. 909.