RAMSEY ET AL. *v.* KETCHAM.

[No. 10,353. Filed April 22, 1920.]

1. WATERS AND WATERCOURSES.—*"Surface Water."—Words and Phrases.*—"Surface water" in its ordinary sense means water collected on the surface of the ground. p. 203.

2. WATERS AND WATERCOURSES.—*Natural Watercourses.—Surface Water.—Barrier by Adjoining Landowner.—Burden of Proof.*—One complaining of the obstruction of flow from a ditch on his land by the erection of a barrier by an adjoining landowner, has the burden to prove that the ditch is a natural

watercourse and that the water obstructed was not surface water. p. 204.

3. TRIAL.—*Findings.—Absence of Material Finding.—Effect.*— A failure to find a material fact is equivalent to a finding against the party upon whom rests the burden of its proof. p. 204.

4. WATERS AND WATERCOURSES.—*Surface Water.—Barriers.— Right to Erect.*—A landowner has the right to erect barriers against surface waters from adjoining lands, provided he does not interfere with a natural or prescriptive watercourse. p. 205.

From Monroe Circuit Court; *Robert W. Miers,* Judge.

Action by John Ramsey and another against Walter Ketcham. From a judgment for defendant, the plaintiffs appeal. *Affirmed.*

*Robert C. Miller* and *James W. Blair,* for appellants. *Joseph E. Henley* and *George W. Henley,* for appellee.

McMahan, J.—This is an action by appellants against appellee for damages caused by an obstruction of an alleged watercourse, and to enjoin the continuance of the obstruction.

The facts as found by the court are in substance as follows: Since 1904 appellants have been the owners of a farm immediately north of a farm owned by appellee. The Monon Railroad extends through said farms in a northerly and southerly course on a grade about eight feet high. The principal portion of appellants' farm slopes from east and northeast to west and southwest. There is a spring on appellants' farm several hundred feet east of the railroad from which the water runs in a southwesterly direction, and is absorbed by the ground before it reaches the railroad. For some distance from the spring the water has made a channel from three to six feet wide down to nothing. No water from this spring reaches the west side of the railroad. There is no channel, bed or banks west of the

railroad. Before the railroad was constructed the surface water from the high ground to the north and east of appellants' land ran south and west to Clear Creek spreading over appellants' land lying west of the place where the railroad is now located, but formed no branch, bed or banks. Such water after leaving appellants' land passed over appellee's, then into Clear Creek. The railroad constructed a culvert under its tracks at a point about six rods north of appellee's north line. The surface water from appellants' land east of the railroad had its outlet through this culvert onto appellants' land west to the railroad, spread out over such land and ran over appellee's land into Clear Creek. Appellants' only means of exit to a public highway was over a private road which they constructed from the railroad west along, and just north of, the south line of their farm. After the construction of said culvert, appellants diverted the flow of the surface water at the point where it left the culvert by digging a ditch from the culvert south to a point near said roadway and near appellee's north line. Appellee sought to obstruct the water thrown upon his land by the ditch by building a dam at the point where the water from the ditch entered his land, and thus caused the surface water to turn and run west on appellants' roadway. A rail fence which had been maintained on the dividing line west of the railroad caused the ground on the dividing line to rise, and tended to hold the water back on appellants' land. At times of heavy rain, after the construction of the dam, the water coming through the culvert ran upon and along said roadway and from twenty to thirty feet north thereof, rendering it impassable. The water from the culvert is thrown upon the roadway partly on account of the dam and partly because of the division of the water by said ditch. The water diverted by reason of the dam was surface water, and was not a

natural watercourse with bed and banks. There is no natural channel or banks or water of any character on appellants' land west of the railroad except for a few days after a heavy rain. The ditch is not a natural watercourse, but was constructed by human agency alone. Upon these facts the court concluded as a matter of law that appellants take nothing.

The first contention of appellants is that the court erred in its conclusion of law. They insist that the statements in the special finding to the effect that the water complained of, and thrown back upon appellants' land, was surface water, are conclusions of law and not statements of facts and must therefore be disregarded. The particular statements which appellants insist should be treated as conclusions are: (1) That, prior to the construction of the railroad grade, "the surface water from the high ground to the north and east" of appellants' land ran southwest and spread over appellants' land lying west of the place where the railroad was afterwards constructed and formed no branch, channel or banks; (2) that after the construction of the culvert "the surface water" from appellants' land to the east had their outlet through this culvert; (3) that appellants after the construction of the culvert diverted the flow of the "surface water" by digging a ditch, and that the dam built by appellee caused such surface water to turn west on appellants' roadway.

Among the various definitions given "surface water" we find the following: "Surface waters are such as diffuse themselves over the surface of the ground, following no defined course or channel, and not gathering into or forming any more definite body of water than a mere bog or marsh." 40 Cyc 639. Surface water is water on the surface of the ground the source of which is so temporary or limited as not to be able to maintain for any considerable time a stream

or body of water having a well-defined and substantial existence. See note to *Cairo, etc., R. Co.* v. *Brevoort* (1894), 25 L. R. A. 527. Surface waters are waters of a casual and vagrant character which ooze from the soil or diffuse or squander themselves over the surface following no definite course. They are waters which, though temporarily and naturally flowing in a known direction, the course has nevertheless no banks or channels in the soil, and include waters which are diffused over the surface of the ground and are derived from rains and melting snows. *Lawton* v. *South Bound R. Co.* (1901), 61 S. C. 548, 39 S. E. 752. The Century Dictionary defines "surface water" to be water which collects on the surface of the ground and usually runs off into drains and sewers.

The court in the use of the expression "surface water" doubtless used it in its ordinary sense, that is, to indicate water collected on the surface of the ground. If this construction be placed upon the word "surface water," the statements in the finding of facts relative to surface water might be held to be statements of facts and not conclusions of law. However, we need not and do not pass upon this question.

If appellants are correct in their contention that such statements are conclusions of law, it would avail them nothing. If we should treat such statements as

2-3. conclusions and ignore them, the conclusion of law as stated by the court upon the facts would still be correct. The burden was on appellants to prove that the watercourse across which appellee constructed the dam was a natural watercourse, and that the water which was thrown upon their land by reason of such dam was not surface water. Where the facts are found specially, the failure of the court to find a material fact is equivalent to a finding against the party on whom rests the burden of proof.

Appellants' next contention is that the special finding of facts, wherein the court found that the water of which complaint is made is surface water, and that the ditch obstructed is not a natural watercourse, is not sustained by sufficient evidence. If these statements are accepted and construed as findings of facts, it is sufficient to say that a large number of witnesses testified relative to the character of the water, and the ditch across which the dam in question was built. We have carefully examined the evidence and, without entering into a general discussion of the same or setting out the testimony of any of the witnesses, we are of the opinion that there is ample evidence to sustain each of such findings.

Every landowner has the right, provided he does not interfere with a natural or prescriptive watercourse, to construct or build on his own land levees and embankments or other barriers to protect his property from surface water which flows thereon from adjoining land. *Clay* v. *Pittsburgh, etc., R. Co.* (1905), 164 Ind. 439, 73 N. E. 904. For other cases discussing and defining watercourse, see *Robinson* v. *Shanks* (1889), 118 Ind. 125, 20 N. E. 713; *Mitchell* v. *Bain* (1895), 142 Ind. 604, 42 N. E. 230; *Hebron Gravel Road Co.* v. *Harvey* (1883), 90 Ind. 192, 46 Am. Rep. 199; *Cairo, etc., R. Co.* v. *Stevens* (1881), 73 Ind. 278, 38 Am. Rep. 139; *Taylor* v. *Fickas* (1878), 64 Ind. 167, 31 Am. Rep. 114; *Walley* v. *Wiley* (1914), 56 Ind. App. 171, 104 N. E. 318; *Trout* v. *Woodward* (1917), 64 Ind. App. 333, 114 N. E. 467; *Evansville, etc., R. Co.* v. *Scott* (1918), 67 Ind. App. 121, 114 N. E. 649; *Wharton* v. *Stevens* (1891), 84 Iowa 107, 50 N. W. 562, 15 L. R. A. 630, 35 Am. St. 296; *Winhold* v. *Finch* (1919), 286 Ill. 614, 122 N. E. 53; *Tampa Waterworks Co.* v. *Cline* (1896), 37 Fla. 586, 20 South. 780, 33 L. R. A. 376, 53 Am. St. 262.

The conclusion of law as stated by the court was not erroneous, nor was there any error in overruling the motion for a new trial. Judgment affirmed.

Batman, J., not participating.