GYR ET AL. *v.* HAGEMANN ET AL.

[No. 18,994. Filed January 11, 1960.]

214

*DeRoo Weber,* of Mount Vernon and *Carroll F. Dillon,* of Evansville, for appellants.

*Ortmeyer, Bamberger, Ortmeyer & Foreman,* of Evansville, and *Verne McClellan,* of Mt. Vernon, for appellees.

BIERLY, P. J.—On June 27, 1955, Charles C. Gyr and Dena Gyr, his wife, appellants, entered into a written option with Willford R. Hagemann and Marguerite Hagemann, his wife, appellees, whereby the latter gave an option to the former for the purchase of certain described real estate in Posey County, Indiana, for a val-

uable consideration. Appellants were given twelve months' time within which to close the option. Appellees likewise were to execute a good warranty deed and furnish appellants an abstract showing a good and merchantable title to the real estate to be conveyed by appellees upon the payment of the purchase price in full set forth in said option.

On April 9, 1956, the appellants instituted this action by a complaint and process against the appellees, Willford R. Hagemann and Marguerite Hagemann, his wife, alleging said appellees are the owners of the real estate described in said option estimated to contain 5.2 acres and for which appellants stand ready and are willing to pay the purchase price of $4358.00, which sum was brought into court for the use of the appellees aforesaid. The Peoples Bank and Trust Company and Sophia Wittmer, both of Mt. Vernon, Indiana, are alleged to be necessary parties to this cause of action as they held a lien or some interest in this property and thus were made defendants (appellees) to answer the complaint. Appellants demanded specific performance of the option for the execution of a warranty deed by Hagemanns, appellees.

Appellees Willford R. Hagemann and Marguerite Hagemann, his wife, and the Peoples Bank and Trust Company filed answers to the complaint. Appellants moved the court to insert new matter in their complaint, which appellees by motion sought to have stricken. This motion was overruled. All of the appellees except Sophia Wittmer filed an answer to the amended complaint. Defendant Sophia Wittmer was defaulted. Appellants had taken no possession of the real estate.

Said issues were presented to the court for trial without the intervention of a jury. The court found against appellants on their complaint as amended and for the

appellees, and rendered judgment for appellees; that appellants take nothing by their action and shall pay the costs of this action; that the Clerk of the Posey Circuit Court be authorized to refund to appellants the deposits made by them in this action.

Appellants timely filed a motion for a new trial on the grounds that the decision of the trial court is not sustained by sufficient evidence and is contrary to law, and error of the trial court in sustaining the objections of the appellees to certain questions propounded by appellants. The court overruled the motion of the appellants for a new trial. Error assigned for reversal is that "the court erred in overruling appellants' motion for a new trial."

For a proper perspective to clarify the issues raised for determination it is advisable to set forth verbatim appellants' Exhibit A entitled "Option for Sale of Real Estate."

"In consideration of Fifty ($50.00) dollars, receipt of which is hereby acknowledged, we hereby agree to give Charles Gyr and Dena Gyr, husband and wife, the option to buy the following described real estate in the county of Posey, state of Indiana, to-wit:

"All that part of the Southeast Quarter of Section 12, Township 7 South, Range 14 West, which lies in said quarter section and is bounded on the South and West by the gravel road, and on the East by the Section line and on the North by the new State Highway, estimated to contain 5.2 acres, more or less.

"Said Charles Gyr and Dena Gyr, husband and wife, shall have the right to close this option at any time within 12 months from date, and I agree to execute to him or any person, named by him, a good warranty deed to said real estate, and to furnish therefor an abstract showing good merchantable title to said real estate in me upon demand therefor.

"$1,000.00 per acre for five (5) acres more or less.

"Upon the execution of said deed and abstract I shall be paid the sum of $800.00 per acre over 5 acres _____ dollars as full payment of the purchase-price of said real estate. I further agree neither to sell nor incumber said real estate during said term and should I do so I will forfeit _____ dollars to said _____ as damages. Likewise, should I fail, neglect or refuse to make said deed, or to furnish said abstract as above provided, I will forfeit to him as damages _____ dollars, I waive all claim for damages for failure to close this option.

"Dated at Mt. Vernon, Indiana, this 27th day of July, 1955.

"Charles Gyr,　　　　　Willford R. Hagemann,
"Dena Gyr,　　　　　　Marguerite Hagemann."

In *Gibbs* v. *Piper* (1930), 34 Del. 382, 153 Atl. 674, citing 35 Cyc., p. 56, the court defined an option thus:

"An option is a continuing offer or contract by which the owner stipulates with another that the latter shall have the right to buy the property at a fixed price within a certain time, and unless the option is founded on a consideration, or is under seal, it may be withdrawn at any time before acceptance. Such an offer imposes no obligation upon the offerer unless within the time expressly or impliedly limited it is accepted."

The record discloses no effort on the part of either appellants or appellees, at the time of the acceptance of said option by appellants, or any time subsequent thereto, to enter into a contract to effectuate or clarify said option, but instead apparently treated said option, after the same was signed by interested parties, as embodying sufficient provisions to render it legally enforceable. Hence, hereafter we shall refer to said option as a contract.

In *Ryan* v. *Summers* (1924), 81 Ind. App. 225, 142 N. E. 879, the court quoted in part from *Ikerd* v. *Beavers* (1886), 106 Ind. 483, 485, 7 N. E. 326, as follows:

"It is essential to the jurisdiction of a court of equity to enforce the performance of a contract, that certain qualities should be found inherent in the contract itself. Besides being complete and definite, it must belong to a class capable of being specifically enforced, and be of a nature that the court can decree its complete performance against both parties without adding to its terms. The contract must be fair, just and equal in its provisions, and the circumstances must be such, at the time the court is called upon to act, that to enforce it would not operate to the oppression of the person against whom the enforcement is asked. Moreover, it must appear that its plaintiff has no adequate remedy at law, and that to refuse to perform the contract would be a fraud upon him."

Upon the criteria set forth in *Ikerd* v. *Beavers, supra,* it is essential for us to measure the contract in the case at bar as to its applicability to support a decree of specific performance.

In an action for specific performance the burden is upon the plaintiffs to show full and complete performance or offer to perform on their part. *Boldt* v. *Early* (1904), 33 Ind. App. 434, 70 N. E. 271.

Specific performance rests in the sound discretion of the trial court and reversal will not result unless there appears an abuse of such discretion. However, the "sound discretion" of the court means, and must be, a sound "judicial" discretion. *McFarlan* v. *Fowler Bank City Trust Co.* (1938), 214 Ind. 10, 12 N. E. 2d 752; *Guraly* v. *Tenta, et al.* (1955), 126 Ind. App. 527, 132 N. E. 2d 725. Such judicial discretion is conformable to the established facts in the case and

the abuse thereof "is an erroneous conclusion and judgment one clearly against the logic and effect of the facts before the court or against the reasonable, probable and actual deductions to be drawn therefrom." *Guraly* v. *Tenta, et al., supra.*

The record herein seems to indicate that the trial court proceeded on the theory that the option-contract was ambiguous to such a degree to be incapable of enforcement. This assumed ambiguity appears to have arisen from the refusal of the appellees to perform the contract on the ground that under the description of the land contained in the option-contract they were authorized to extend the metes and bounds measurement to the center of the dedicated highways and charge for the acreages covered by the easement portion of such highways. In other words, without any written agreement therefor by the parties, appellees seek to charge appellants under the description in the option-contract for land under a public highway devoted to a public easement of use on the sole theory that at some distant time such highway may be abandoned or vacated as a public thoroughfare, and appellants or their successor in interest may then be able to use such land for their own purposes. We see no such ambiguity in this option-contract. Further, we are not able to comprehend that the legal description contained in said option-contract is such as to require parol evidence to explain the terms thereof. The option-contract describes part of the land in the southeast quarter of section 12, which is contained within the area thereof lying between the gravel road on the south and the new state highway on the north and the gravel road on the west and the section line on the east. Such portion of land is estimated to contain 5.2 acres and the undisputed evidence discloses the acreage as limited by

the highway boundary lines and said section line is 5.1. The option-contract nowhere specifies the center of the highway as boundary lines for the real estate described therein. Geometrically speaking, a section line has no magnitude except length and thus no center line. The rule prevails that the intention of the parties to a written contract must be derived from their written expressions within the four corners of the instrument or document, and the further rule prevails the contracts must be specifically enforced as they are written without any additions thereto or deductions therefrom by the court.

Appellees seek to maintain their contention that under this contract they can include in the measurements and charge appellants for the land under and up to the center of the public highway by citation of authorities which announces the age-old rule that the conveyance of land bounded by a highway carries title to the center of the highway. This precept is assured correctness by the many years it has obtained as a rule of property. It is only where the language of the "deed" or the "conveyance" manifests a contrary intention that the rigor of the rule is relaxed. The reason for the rule is as well established as the rule itself, and that is that the margins of highways shall not be clouded and cut into by "innumerable strips and gores of land." But said rule is of no assistance to appellees in this action. Upon specific questions from our bench, appellees were unable to suggest an authority which held that said rule is to be interpreted in application as the appellees now seek to use it. While, under said authorities, the conveyance of the land bounded by the highway carries "title" to the center of the highway, yet such "title" thereto remains subject to the public easement for travel until the land

covered by the highway is freed therefrom by vacation, non-user, or abandonment. Then and then only, does the "title" of the record owner become more than a mere possibility of absolute exercise at some undetermined future time.

Such being the situation as to the "title" to the center of the highway, it seems extremely forced and grossly illogical to put the interpretation upon this contract which is urged by the appellees. The intention of the parties as expressed in the option-contract under consideration seems clear. A proper deed of conveyance using the description of the land contained in this option-contract certainly would be sufficiently definite as to land sought to be conveyed. The record does not disclose that either party to this action offered or filed any pleading seeking the modification of the contract on the ground that it did not represent or express the true intention of the parties. In the absence of any such pleadings, this court is not justified in attempting to negotiate a contrary contract for the parties in reliance upon parol evidence for such purposes.

It appears from the record that there was a conflict in the evidence as to the amount of the purchase price for the land described in said contract. Yet this conflict of evidence, indicating a lack of agreement as to the basis of computation of the purchase price by the parties would supply no ground for denial of specific performance. The appellants seemingly computed the amount due under the contract for the land upon the basis of $800.00 per acre and tendered their computed amount of $4,358.00 by a deposit of the same in the office of the Clerk of the Circuit Court. They also alleged that they "stand ready and willing to pay." Although the option contract bears the imprint of a careless and crude draft, nevertheless, it

clearly appears, by the application of common sense and understanding, that it was the intention of the parties that upon the exercise of the option by appellants, the price of the land was to be at the rate of $1,000.00 per acre for five (5) acres or less, and at the rate of $800.00 per acre for acreage over five (5) acres. Recalling our previous statement that neither side to this action offered or filed any pleading requesting a modification of the option-contract on the ground that it did not express the true intention of the parties, and in light of our comment above, it follows, in our opinion, that the court should have determined the amount due under the contract for the real estate described therein and, in case the amount tendered by appellants was found insufficient, an appropriate court order should have been entered requiring the appellants to pay the determined amount into the clerk's office within a specified reasonable time for the use and benefit of appellees; and that failure of appellants to comply therewith would result in the denial of their application for specific performance. Additional proper provisions as to the required duties of both parties should, of course, have been incorporated therein.

The record is not fortified by findings of facts and conclusions of law by the trial court. Moreover, the record is silent as to any request by either party that the court state its finding of facts and conclusion of law. Hence, as the record now stands, we are impressed that the court abused its judicial discretion in refusing to specifically enforce the involved option contract as written. In our opinion, there appears no sound reason, under the facts before the court, for the denial of such specific performance. We perceive no authority authorizing these appellees to add something onto the plain expressed language of the description of the land

contained in the written option-contract, and then to refuse to comply with their obligation to convey on the ground that appellants refused to recognize and pay for the land attempted to be added onto the description by appellees without any agreement to that effect with appellants. Appellees have submitted no such authority.

The rule that a "conveyance" of land bounded by a highway carries "title" to the center of the highway, unless otherwise expressed, being a rule of public policy and necessity, does not, in our opinion, support a contention that a contract to purchase land, described as bounded by certain public highways, authorizes one of the parties, namely the seller, in the absence of an agreement therefor, to add onto the acreage described in the contract, the land extending to the center of such public highways, and charge the purchaser for such encumbered land at the same rate provided in the contract for the useable acreage. Had the parties such an intent it should have so set forth in the contract, and for the appellees to now say that such was their intention and, therefore, the contract is so ambiguous and uncertain that it is incapable of specific performance, not only violates the well established rules of contract interpretation and construction, but, if acceded to by the court, would establish a doctrine under which the right of specific performance of all contracts could be prohibited or vastly diminished at the whim or caprice of one of the parties to the contract.

As the matter now stands, there appears a valid, unchallenged option-contract supported by a consideration of $50.00 paid by appellants to appellees, whereby appellees agreed, upon the exercise by appellants of their agreed right "to close this option," to execute to appellants a good "warranty" deed to certain real estate described therein at an agreed price per acre; which

said contract appellees refused to perform upon their own self-invoked interpretation of the contract in a manner favorable to them. And by reason of such personal interpretation by appellees of an unambiguous agreement, appellants are denied the equities exercisable by the court in the premises and their contract rights are brushed aside and left to perish, together with the consideration paid by them under the terms of the agreement. In result, the case savors of an enforced unilateral contract rather than the adjustment of mutual rights under a bilateral contract.

In our opinion it appears rather incongruous that appellees should execute an option for the purchase of an estimated *5.2 acres* of their land by appellants (who closed said option within the specified time) and thereafter demanded payment from the appellants for *8.95 acres,* based on the same option contract.

In the hope of clarity of our views, it must be observed that appellees agreed, upon valuable consideration, to execute a "warranty" deed to the property described in the option. Under the existing facts, appellees are powerless to effectively "warrant" a good "merchantable" title to the land under the highways. Therefore, it must stand to reason that they did not intend that the description of the land in the option, which the appellants were to purchase and pay for, was to extend by metes and bounds to the center of the highways. Further, it is not to be presumed, in interpreting a written contract, that the parties intend to undertake the performance of impossible acts. It follows that appellees' contention is rendered untenable by the impossibility of their performance of the very thing they contend for. Assume, for instance, that appellants were agreeable to a description of the land extending to the center of the highways, in what way

or manner other than the vacation of the public highway easement, could appellees "warrant" a "merchantable" title to appellants of the land beneath the public highways? Merchantable Title: *Kenefick* v. *Schumaker* (1917), 64 Ind. App. 552, 563, 116 N. E. 319; *Smith et al.* v. *Turner et al.* (1875), 50 Ind. 367, 372, 373; 66 C. J. Vendor and Purchaser, §532. Appellees' own contention demonstrates the lack of any ambiguity in the contract description of the land and also establishes the futility of their asserted reason for refusing to perform the contract.

The briefs contain intimations that, because appellants submitted a deed which was unacceptable to appellees and the latter submitted a deed which was not acceptable to the former, it is evident that the agreement does not express the true intentions of the parties and, therefore, that such ambiguity becomes so apparent as to render the contract unenforceable by specific performance. We think there is nothing to this intimation. Such acts are insufficient to change the terms of the written agreement or instrument in the absence of a mutual agreement therefor.

It appears from the evidence that the deed submitted by appellants contained the description given in the contract and that appellees refused to sign it because it did not contain the land under the highways. Yet, the court denied appellants any equitable relief notwithstanding that the established facts show that the appellants' deed, in so far as the description of the land is concerned, was the description contained in the option-contract.

The evidence also discloses that appellants closed said option in order to acquire said land or real estate

upon which to build a contemplated motel. It  would seem, therefore, that the particular real estate possessed an intrinsic value to appellants and the latter could not be adequately recompensed by way of damages in lieu of enforcement of the option-contract by specific performance.

The judgment appealed from should be reversed and the cause remanded with instructions for further proceedings not inconsistent with the opinion of this court.

Judgment reversed.

Gonas, Kelley and Smith, JJ., concur.

NOTE.—Reported in 163 N. E. 2d 620.